**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| DUSA PHARMACEUTICALS, INC. | |
| Plaintiff | |
| v. | Civil Action No. 1:18-cv-10568-RGS |
| BIOFRONTERA INC., BIOFRONTERA BIOSCIENCE GMBH, BIOFRONTERA PHARMA GMBH, AND BIOFRONTERA AG, | **JURY TRIAL DEMANDED** |
| Defendants. | |

**BIOFRONTERA'S OPENING CLAIM CONSTRUCTION BRIEF**

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................. 1

II.   TECHNICAL BACKGROUND OF THE ASSERTED PATENTS .................................. 2

III.  LEGAL STANDARDS OF CLAIM CONSTRUCTION..................................................... 4

IV.   CONSTRUCTION OF DISPUTED TERMS................................................................. 7

      A.    "illuminator" ('289 Patent claims 1-6, 16-19; '991 Patent claims 1-12)................ 7

          1. The Asserted Patents State Unequivocally that the Invention Is a
             Contoured Illuminator / Light Sources...................................................... 9

          2. The Asserted Patents Present Only a Contoured Embodiment and Tie the
             Claimed Uniformity Characteristics Directly to that Contoured
             Embodiment ......................................................................................... 13

          3. The Asserted Patents Disparage Flat Illuminators.................................... 14

          4. The Claimed Invention Is Limited to a Contoured Illuminator / Light
             Sources ............................................................................................... 15

      B.    "plurality of light sources configurable in a spaced relationship to the patient"
          ('991 Patent claim 1)................................................................................... 17

      C.    "all operation distances" ('289 Patent claim 1; '991 Patent claim 11)................. 19

      D.    "uniform output of light" / "uniform output of at least one of blue light and red
          light" ('991 Patent claims 1, 12)......................................................................... 21

V.    CONCLUSION................................................................................................. 24

## TABLE OF EXHIBITS

Exhibit 1 – U.S Patent No. 8,216,289

Exhibit 2 – U.S. Patent No. 9,723,991

Exhibit 3 – Excerpts from the Prosecution History of U.S. Patent No. 8,216,289

Exhibit 4 – Excerpts from the Prosecution History of U.S. Patent No. 9,723,991

Exhibit 5 – Excerpts from the Deposition of Elton Leppelmeier dated June 22, 2018

Exhibit 6 – Excerpts from the Deposition of Rebecca Kozodoy dated August 22, 2018

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson Corp. v. Fiber Composites, LLC*,
    474 F.3d 1361 (Fed. Cir. 2007)........................................................................................14

*Astrazeneca AB v. Mut. Pharm. Co.*,
    384 F.3d 1333 (Fed. Cir. 2004)..........................................................................8, 13, 15, 17

*in re Body Science LLC Patent Litigation*,
    167 F.Supp.3d 152 (D. Mass. 2016) .................................................................................18

*Boston Scientific Corp. v. Cook Inc.*,
    187 F.Supp.3d 249 (D. Mass. 2016) ...................................................................................6

*Burke, Inc. v. Bruno Indep. Living Aids, Inc.*,
    183 F.3d 1334 (Fed. Cir. 1999)...........................................................................................4

*Chi. Bd. Options Exch., Inc. v. Int'l Sec. Exch., LLC*,
    677 F.3d 1361 (Fed.Cir.2012)...........................................................................................15

*Computer Docking Sta. Corp. v. Dell, Inc.*,
    519 F.3d 1366 (Fed. Cir. 2008)...........................................................................................6

*Cultor Corp. v. A.E. Staley Mfg. Co.*,
    224 F.3d 1328 (Fed. Cir. 2000)...........................................................................................6

*Deere & Co. v. Bush Hog, LLC*,
    703 F.3d 1349 (Fed. Cir. 2012)...........................................................................................8

*Dow Chemicals Co. v. Nova Chemicals Corp.*,
    803 F.3d 620 (Fed. Cir. 2015)...........................................................................................20

*Fresenius Medical Care Holdings, Inc. v. Paddock Labs., Inc.*,
    742 F.Supp.2d 158 (D. Mass. 2010) ............................................................................5, 6, 7

*Halliburton Energy Servs., Inc. v. M–I LLC*,
    514 F.3d 1244 (Fed. Cir. 2008).........................................................................................23

*Honeywell Intern. Inc. v. ITT Industries, Inc.*,
    452 F.3d 1312 (Fed. Cir. 2006).........................................................................................11

*Interval Licensing, LLC v. AOL, Inc.*,
    766 F.3d 1364 (Fed. Cir. 2014).....................................................................................19, 21

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
   134 S.Ct. 2120 (2014)........................................................................................19, 22

*in re Neurografix ('360) Patent Litigation*,
   201 F.Supp.3d 206 (D. Mass. 2016) ..................................................................19

*Openwave Sys., Inc. v. Apple Inc.*,
   808 F.3d 509 (Fed. Cir. 2015)........................................................................6, 15

*Pacing Techs., LLC v. Garmin Int'l, Inc.*,
   778 F.3d 1021 (Fed. Cir. 2015)..........................................................6, 9, 11, 15

*PerkinElmer Health Sciences, Inc. v. Agilent Technologies, Inc.*,
   962 F.Supp.2d 304 (D. Mass. 2013) ....................................................................8

*Phillips v. AWH Corporation*,
   415 F.3d 1303 (Fed. Cir. 2005) (*en banc*) .....................................................5, 6

*Poly–Am., LP v. GSE Lining Tech., Inc.*,
   383 F.3d 1303 (Fed. Cir. 2004).............................................................................8

*Prolifiq Software Inc. v. Veeva Systems Inc.*,
   2014 WL 3870016 (N.D. Cal. Aug. 6, 2014) .....................................................19

*Regents of University of Minnesota v. AGA Medical Corp.*,
   717 F.3d 929 (Fed. Cir. 2013).............................................................................16

*Rembrandt Patent Innovations, LLC v. Apple, Inc.*,
   716 Fed. Appx. 965 (Fed. Cir. 2017) (unpublished)..........................6, 8, 15, 16, 17

*SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*,
   242 F.3d 1337 (Fed. Cir. 2001).............................................................................9

*Teva Pharmaceuticals USA, Inc. v. Sandoz, Inc.*,
   789 F.3d 1335 (Fed. Cir. 2015)..........................................................................20

*Verizon Servs. Corp. v. Vonage Holdings Corp.*,
   503 F.3d 1295 (Fed. Cir. 2007)....................................................................11, 16

**Statutes**

35 U.S.C. § 112................................................................................................19, 21

## I.      INTRODUCTION

Plaintiff secured the two patents-in-suit for a contoured-shaped illuminator that purported to resolve the deficiencies of flat illuminators.  Yet now, years after filing its original application, with one of those patents expired and the other on the verge of expiration, Plaintiff attempts to use claim construction in this lawsuit to radically expand its invention to cover illuminators of all shapes and sizes, including those very same flat illuminators that the patents criticize.  Plaintiff's attempt to stretch its claims in this manner contravenes the most basic principles of claim construction and should not be allowed.  Rather, as Biofrontera proposes, those claims must be confined to illuminators/light sources that "generally conform to a contoured surface."[1]

The Asserted Patents – U.S. Patent Nos. 8,216,289 and 9,723,991 – consistently and without exception describe *the invention* as an illuminator that generally conforms to a contoured surface.  Moreover, they include only one embodiment – that of a contoured, U-shaped illuminator with lights conforming to a patient's face – and they expressly tie that contoured design to the asserted claims.[2]  Finally, the Asserted Patents disparage flat illuminators as unable to accomplish the claimed benefits of the invention, stating that "[*a*] *flat emitting surface would not deliver a uniform light dose to all contours of the face simultaneously*."  Each of these facts independently demonstrates that the invention comprises an illuminator that "generally conform to a contoured surface."  Together they present a clear picture of the invention and require limitation to that contoured design.

Separately, the parties disagree over whether two limitations in the asserted claims – "all operation distances" and "uniform output of light" – meet the statutory definiteness requirement.

---

[1] References to Biofrontera are to Defendants Biofrontera Inc., Biofrontera Pharma GmbH, Biofrontera Bioscience GmbH, and Biofrontera AG.

[2] Plaintiff has asserted claims 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 15, 16, 17, 18, 19 from the '289 Patent and claims 1, 2, 3, 5, 6, 7, 9, 10, 11, 12 from the '991 Patent.

Neither term is defined in the Asserted Patents, nor tethered to a specific meaning in the specification, nor accompanied in the claims by language that provides reasonable certainty as to their scope, as required by governing law. Accordingly, they are indefinite.[3]

## II.    TECHNICAL BACKGROUND OF THE ASSERTED PATENTS

The Asserted Patents share the same specification and are both directed to "an apparatus and method for photodynamic therapy or diagnosis using an illuminator comprising a plurality of light sources generally conforming to a contoured surface and irradiating the contoured surface with substantially uniform intensity visible light." Ex. 1, '289 Patent at Abstract.[4] Photodyanmic therapy ("PDT") is a medical treatment for ailments of the skin or other tissues. *Id*. at 1:41-54. PDT uses a photo-sensitive topical agent that is applied to the skin and then activated by the application of light. *Id*. The agent as activated by the light will then selectively destroy or alter the targeted area. *Id*. The destruction or alteration can be used to treat or diagnose various skin-related conditions, including skin cancers, precancerous lesions, acne, photo-damaged skin, warts, psoriasis, or hair removal. *Id*. at 15:12-16, 38-46. In PDT treatments it is desirable to have light that is "uniform in intensity and color" in order to provide consistent treatment and the light dose over the illuminated area. *Id*. at 2:24–30.

As the Asserted Patents acknowledge, these basic concepts of light therapy, PDT, and photo-activated agents were previously known in the field. *Id*. at 1:55-2:7. The patents describe

---

[3] The parties disputes over the terms "illuminator/plurality of light sources," on the one hand, and the indefinite terms, on the other hand, are each separately case dispositive. Should Biofrontera's proposed construction of "illuminator/plurality of light sources" be adopted, Plaintiff's infringement allegations against Biofrontera's flat illuminator cannot be sustained. Separately, should the Court agree with Biofrontera that both terms "all operation distances" and "uniform output of light" are indefinite, then all asserted claims would be invalid.

[4] For convenience, all references herein are to the '289 Patent specification, but identical recitations appear in the '991 Patent specification.

PDT using 5-aminolevulinc acid ("ALA"), but admits that PDT using ALA also was previously known and thus not the inventive step of the Asserted Patents. *Id.* at 1:51-66. The patents further admit that conventional light sources for usage in PDT, such as fluorescent lights, were known in the art. *Id.* at 2:11-28.

The Asserted Patents thus focus on the shape of the illuminator used in PDT, and seek to solve the specific problem that "conventional illuminators do not produce visible light that is sufficiently uniform in intensity over a contoured surface." *Id.* at 2:37–45. Contoured is defined by the patents to be synonymous with a "non-planar surface." *Id.* at 2:47-48. The Asserted Patents teach a contoured, non-planar device that conforms to that contoured surface in order to provide uniform illumination. *See, e.g., id.* at Fig. 1:

3

## FIG. 1



Consistent with Figure 1, the Asserted Patents repeatedly and exclusively describe the invention as an illuminator which conforms to a contoured surface. *See, e.g., Id.* at 2:66-3:6; 3:7-14; 4:1-6; 4:40-42. The Asserted Patents also criticize flat, non-contoured illuminators as unable to provide the uniform illumination of the invention. *Id.* at 4:35-43.

## III.    LEGAL STANDARDS OF CLAIM CONSTRUCTION

"A claim in a patent provides the metes and bounds of the right which the patent confers on the patentee to exclude others from making, using or selling the protected invention." *Burke, Inc. v. Bruno Indep. Living Aids, Inc.*, 183 F.3d 1334, 1340 (Fed. Cir. 1999). The construction of

4

patent claim terms is a question of law determined by the court.  *Fresenius Medical Care Holdings, Inc. v. Paddock Labs., Inc.*, 742 F.Supp.2d 158, 161 (D. Mass. 2010) (citing *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 388–389 (1996)).

Interpretation of disputed claim terms begins with the claim language itself and its plain meaning to one of ordinary skill in the art.  *Phillips v. AWH Corporation*, 415 F.3d 1303, 1312–13 (Fed. Cir. 2005) (*en banc*).   However, claims do not stand alone; they must be read in light of the accompanying specification.  *Phillips*, 415 F.3d at 1314–15 ("claims 'must be read in view of the specification, of which they are a part.'") (quoting *Markman*, 52 F.2d at 979).  Indeed, "[*t]he patent specification 'is always highly relevant to the claim construction analysis. Usually it is dispositive; it is the single best guide to the meaning of a disputed term*.'"   *Fresenius*, 742 F.Supp.2d at 161 (quoting *Phillips*, 415 F.3d at 1315; *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)) (emphasis added); *see also Phillips*, 415 F.3d at 1313 ("the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification.")

*Phillips* emphasized the important role the specification plays in the claim construction process.  Due to the statutory directive that the specification describe the claimed invention in "full, clear, and concise terms":

> Ultimately, the interpretation to be given a term can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop with the claim. The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction.

*Phillips*, 415 F.3d at 1316.

Although a claim is not necessarily limited to embodiments disclosed in the specification, "repeated and definitive remarks in the written description" can be used to define the claim's scope. *Computer Docking Sta. Corp. v. Dell, Inc.,* 519 F.3d 1366, 1374 (Fed. Cir. 2008) (*citing Watts v. XL Sys.*, 232 F.3d 877, 882 (Fed. Cir. 2000) ("repeated and definitive remarks in the written description could restrict a claim limitation to a particular structure").  For example, where the specification describes the "present invention" in a specific manner, such statements constitute "clear and unmistakable statements by the patentee that limit the claims."  *Pacing Techs., LLC v. Garmin Int'l, Inc.*, 778 F.3d 1021, 1024 (Fed. Cir. 2015).  Further, where the patentee distinguishes its invention from the prior art, including by criticizing alternative devices, that subject matter cannot fall within the scope of the patent's claims.  *Cultor Corp. v. A.E. Staley Mfg. Co.*, 224 F.3d 1328, 1331 (Fed. Cir. 2000); *see also Openwave Sys., Inc. v. Apple Inc.*, 808 F.3d 509, 513–517 (Fed. Cir. 2015) (where the patentee disparages certain alternatives devices, "it is difficult to envisage how… one could read the claims of the patents-in-suit to cover such devices."); *Rembrandt Patent Innovations, LLC v. Apple, Inc.*, 716 Fed. Appx. 965, 972 (Fed. Cir. 2017) (unpublished) (requirement of automated design in patent "is reinforced by its criticism of prior art recovery methods that involved human intervention").

In addition to the patent claims and specification, a court may consult the prosecution history while construing disputed claim terms.  *See Phillips*, 415 F.3d at 1317.  The prosecution history can "often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution."  *Id.*  However, the prosecution history "may not be as authoritative as the specification."  *Fresenius*, 742 F.Supp.2d at 161.  Courts may also look to extrinsic evidence outside the patent "as a last resort," *id*., although such extrinsic evidence is "less reliable" than the

6

intrinsic record.  *Boston Scientific Corp. v. Cook Inc.*, 187 F.Supp.3d 249, 257 (D. Mass. 2016) (quoting *Phillips*, 415 F.3d at 1318–19).

## IV.   CONSTRUCTION OF DISPUTED TERMS

### A.  "illuminator" ('289 Patent claims 1-6, 16-19; '991 Patent claims 1-12)

| Defendants' Construction | Plaintiff's Construction |
| --- | --- |
| "one or more light sources generally conforming to a contoured surface" | "a light emitting medical instrument" |

The Asserted Patents describe their alleged invention clearly as comprising an "apparatus and method for photodynamic therapy … using *an illuminator comprising a plurality of light sources generally conforming to a contoured surface.*"  Ex. 1 at Abstract.  Defendants' proposed construction for the term "illuminator" tracks verbatim this statement, and is further supported by the intrinsic record as a whole.

As the Federal Circuit and courts in this District have repeatedly confirmed, the patent specification "is the single best guide to the meaning of a disputed term."  *Fresenius*, 742 F.Supp.2d at 161 (quoting *Phillips* and *Vitronics*).  Indeed, "[u]sually it is dispositive," *id.*, and that is certainly the case here.  In at least three different ways, the specification makes clear that the invention and the claimed "illuminator" must generally conform to a contoured surface.  First, consistent with statement in the Abstract, the specification repeatedly describes *the present invention* as an illuminator which conforms to a contoured surface, and thereby solves the problem of uniform illumination over such a surface.  Second, *the specification discloses only one embodiment, and that one embodiment has a contoured shape*.  The specification further ties the claimed uniformity achieved by the invention directly to that contoured embodiment.  And third, the specification *criticizes the usage of flat illuminators* as unable to solve the purported problem and uniformly illuminate a contoured surface.

7

As discussed below, any one of these facts is sufficient to demonstrate that Plaintiff's invention should be limited as Biofrontera has proposed. And the combination of all three unquestionably does. *See, e.g., Rembrandt*, 716 Fed. Appx. at 971–972 (finding patent claims were limited to "automatic" computer recovery notwithstanding the absence of that word in the claims, where the specification described automation as "the present invention," contained only one embodiment that was automated, and criticized prior art methods of recovery by human intervention); *Astrazeneca AB v. Mut. Pharm. Co.,* 384 F.3d 1333, 1338–41 (Fed. Cir. 2004) (finding claim limited to "surfactant solubilizer" where patentee defined invention to use surfactant solubilizers, all listed preferred embodiment solubilizers were surfactant, and specification disavowed and criticized non-surfactant solubilizers as undesirable and unable to achieve the novel results of the invention). Accordingly, the "illuminator" of Asserted Patents is not simply a generic "light emitting medical instrument" – indeed the patents admit that generic instruments (including flat ones) for emitting light for PDT existed in the prior art – but instead is an improved light instrument described by the patents as comprising "one or more light sources generally conforming to a contoured surface."[5]

---

[5] In the '289 Patent, the term "illuminator" appears in the preamble and the body of the one independent claim. In the one independent claim of the '991 Patent, the term appears only in the preamble but nonetheless functions as a claim limitation because it is "essential to understanding the limitations or terms in the claim body" and "recites additional structure … underscored as important by the specification." *PerkinElmer Health Sciences, Inc. v. Agilent Technologies, Inc.*, 962 F.Supp.2d 304, 310 (D. Mass. 2013) (citing *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808–09 (Fed. Cir. 2002)). As to essentiality, the specification describes the contoured "illuminator" as "the present invention" claimed by the '991 Patent. *See Deere & Co. v. Bush Hog, LLC*, 703 F.3d 1349, 1358 (Fed. Cir. 2012) (finding that preamble phrase "rotary cutter deck" was a limitation where the specification referred to "the present invention" as "a rotary cutter deck"); *Poly–Am., LP v. GSE Lining Tech., Inc.*, 383 F.3d 1303, 1310 (Fed. Cir. 2004) (construing preamble as limiting where it disclosed a "fundamental characteristic of the claimed invention"). The preamble's recitation of an "illuminator" similarly "informs one of skill in the art as to the structure required by the claim" and the specification "underscores the

### 1. The Asserted Patents State Unequivocally that the Invention Is a Contoured Illuminator / Light Sources

The inventing community is entitled to rely on an applicant's repeated descriptions of the invention, and the Federal Circuit has thus enforced "clear and unmistakable statements by the patentee that limit the claims, such as 'the present invention includes...' or 'the present invention is ...' or 'all embodiments of the present invention are....'" . *Pacing Techs., LLC v. Garmin Int'l, Inc.*, 778 F.3d at 1024–25; *see also SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc*., 242 F.3d 1337, 1343 (Fed. Cir. 2001) ("the characterization of the coaxial configuration as part of the 'present invention' is strong evidence that the claims should not be read to encompass the opposite structure.").

Here, the patentee has used the exact language cited in *Pacing Technologies*, repeatedly describing the illuminator/light sources of *the present invention* as conforming to a contoured surface.

- "In accomplishing the foregoing objects, there has been provided *according to the present invention* **an illuminator for PDT or PD of a contoured surface. The illuminator comprises a plurality of light sources generally conforming to the contoured surface** and irradiating the contoured surface with substantially uniform intensity visible light, **and a housing supporting the plurality of light sources with respect to the contoured surface**." Ex. 1 at 2:66-3:6 (emphasis added).

- "In accomplishing the foregoing objects, there is also provided *according to the present invention* **a method of PDT or PD of a contoured surface**. The method comprises topically applying 5-aminolevulinic acid to the contoured surface, and **irradiating the contoured surface with substantially uniform intensity visible light from the plurality of light sources generally conforming to the contoured surface**." *Id.* at 3:7-14 (emphasis added).

- "In accomplishing the foregoing objects, there is also provided *according to the present invention* for photodynamically diagnosing or treating a contoured surface, **the light coming from a plurality of sources generally conforming to**

---

importance" of that limitation, as opposed to merely giving a "name" to the invention. *Deere*, 703 F.3d at 1358.

the contoured surface and irradiating the contoured surface with uniform
        intensity." *Id.* at 4:1-6 (emphasis added).

- "*the present invention* uses a U-shaped emitting surface that more closely
        follows the contours of the human face and scalp" *Id.* at 4:40-42 (emphasis
        added).

The Asserted Patents also explain why the contoured design of the invention is so important

– namely, because they address the specific problem of illuminating "diversely contoured"

surfaces that the invention purports to solve:

- "Conventional illuminators do not produce visible light that is sufficiently
        uniform in intensity **over a contoured surface**." Ex. 1 at 2:37-38 (emphasis
        added).

- "Another object of *the invention* is to provide an illuminator for PDT that
        produces visible light of consistent uniformity in terms of both spectral
        characteristics and intensity **over a diversely contoured surface**. **As it is used
        here, the term contoured surface refers to a non-planar surface.** ... A further
        object of *the present invention* is to provide an illuminator for irradiating the face
        or scalp of the patient." *Id*. at 2:44-53 (emphasis added).

Consistent with the Asserted Patents' written description, the only figures showing the

shape of the illuminator depict it conforming to the contoured surface of the human face. Figure

1, which the specification describes as "*an illuminator according to the present invention*" is

representative:

10

## FIG. 1



Ex. 1 at Fig. 1; 4:66-67.  In other words, the patent specification as a whole presents a consistent

message as to exactly what the illuminator of the invention comprises.  This is the exact scenario

that the Federal Circuit has found to limit claim scope.  *See e.g., Pacing Techs.*, 778 F.3d 1021,

1024–25 ("the present invention is" or "the present invention includes" are "clear and

unmistakable statements by the patentee that limit the claims"); *Verizon Servs. Corp. v. Vonage*

*Holdings Corp.*, 503 F.3d 1295, 1308 (Fed. Cir. 2007) ("When a patent thus describes the features

of the 'present invention' as a whole, this description limits the scope of the invention.");

*Honeywell Intern. Inc. v. ITT Industries, Inc.*, 452 F.3d 1312, 1318 (Fed. Cir. 2006) ("On at least

11

four occasions, the written description refers to the fuel filter as 'this invention' or 'the present invention' … The public is entitled to take the patentee at his word and the word was that the invention is a fuel filter.").

Moreover, the specification's consistent description of "the present invention" has been further confirmed by the two inventors of the Asserted Patents who have been deposed to date. Inventors Elton Leppelmeier and Rebecca Kozodoy both agreed that the description on the front of the patents of "an illuminator comprising a plurality of light sources generally conforming to a contoured surface" accurately described the invention as they understood it. Ex. 5 (Leppelmeier) at 61:15-62:4; Ex. 6 (Kozodoy) at 69:14-70:2. Dr. Kozodoy confirmed that "flat" illuminators existed *prior* to the invention and that the invention was intended to move beyond those with a "more curved illuminator that could illuminate a curved surface," responding that the invention was about "[s]pecifically the face." Ex. 6 at 65:19-25; *see also id.* at 63:7-13 (describing the problem solved by the invention as "uniform distribution of light to the face for photodynamic therapy"); Ex. 5 at 60:19-61:6 (inventor Leppelmeier stating that the problem of "contoured illumination" was solved by "the arrangement of the lamps" and the "U-shaped design"). And Dr. Kozodoy stated specifically that there were no existing illuminators "to deliver a uniform distribution of light to the face" but there did exist prior to the invention "light therapy panels" comprised of "straight fluorescent tubes that form[] a plane to deliver light to a large, flat or relatively flat region of the body, such as the chest or the back." Ex. 6 at 64:11-65:10

To construe "illuminator" as any "light emitting medical instrument," as Plaintiff proposes, runs wholly counter to how the Asserted Patents and the inventors themselves have described the invention. Plaintiff's proposed construction is nowhere found in the Asserted Patents, which admit to the contrary that light emitting medical instruments for PDT were known and unsatisfactory,

12

and which distinguish the contoured illuminator of the invention from such conventional illuminators. Plaintiff's construction does not align with the invention as presented and would allow Plaintiff to cover designs the inventors admitted they did not invent.

### 2. The Asserted Patents Present Only a Contoured Embodiment and Tie the Claimed Uniformity Characteristics Directly to that Contoured Embodiment

Beyond the above descriptions of the "present invention," all figures and the written description of the invention correspond to a single contoured embodiment. In that one embodiment, "**visible light is produced by contour surface conforming fluorescent tubes and their associated control electronics**; visible light output from these tubes is **directed toward the diagnosis or treatment area by the contour surface conforming shape of the tubes**." Ex. 1 at 4:9-17. The lights of the illuminator are described as having a "generally arcuate segment connected to a generally straight segment," matching the U-shaped design that conforms to a contoured surface shown in Figure 1. *Id.* at 3:15-19; 3:29-33; *see also* Figs. 1, 4A; 5:27-29; 5:40-45; 6:16-18; 6:31-33; 6:39-42. There are no flat or non-contoured embodiments presented or even suggested.[6]

Further, the only recitation of the specific uniformity limitations that are recited in claim 1 of the '289 patent, for example – "60% of the measured maximum [output] over all operation distances," '289 Patent claim 1 – is tied directly to the contoured embodiment. The patent specification provides one single mention of this uniformity threshold, stating that "[i]t has been found that, according to a preferred embodiment of the present invention, the measured output

---

[6] While presentation of only a single embodiment does not automatically limit a claim, "the patentee's choice of preferred embodiments can shed light on the intended scope of the claims," especially in light of the consistent description of the invention throughout the specification. *See Astrazeneca*, 384 F.3d at 1339–41 (the fact that preferred embodiment and only presented examples were limited "adds further support to the conclusion that the term … in the claims should be limited, according to the definition employed in the specification").

over the active emitting area is within 70% of the measured maximum when measured with a cosine response detector at distances of 4" and 2", and *within 60% of the measured maximum overall operation distances*." Ex. 1 at 15:6-11. Indeed, when required by the Patent Office to provide support in the specification for asserted claim 1 of the '289 Patent and asserted claim 1 of the '991 Patent, the applicant pointed to this passage in the specification. Ex. 3 ('289 Patent File History), Preliminary Amendment dated October 4, 2011 at 5; *see also* Ex. 4 ('991 Patent File History), Preliminary Amendment dated March 2, 2015 at 4. This only cited support for the asserted claims specifically ties the claimed uniformity properties to the single "preferred embodiment of the present invention;" *i.e.*, the contoured invention described throughout the specification. *See Anderson Corp. v. Fiber Composites, LLC*, 474 F.3d 1361, 1367 (Fed. Cir. 2007) (limiting the term "composite composition" where, according to the specification, the limitation was "'require[d]' in order for the composite composition to be capable" of having the "claimed physical properties").

### 3.  The Asserted Patents Disparage Flat Illuminators

Still more confirmation that the asserted claims are limited to contoured illuminators comes from the patentee's explicit criticism of "flat" (i.e., non-contoured) light sources as *unable* to accomplish the purposes set forth in the invention. The Asserted Patents indicate that "distance from the source is an important variable in all optical systems" and as a result "variations in output irradiance with distance must be minimized." Ex. 1 at 4:32-35. In addressing this issue, the specification states that "[*a*] *flat emitting surface would not deliver a uniform light dose to all contours of the face simultaneously* because the non-planar facial and scalp surfaces could not be placed at a constant distance from the emitting surface. To ameliorate this problem, *the present invention uses a U-shaped emitting surface* that more closely follows the contours of the human face and scalp, and minimizes lamp to target distance variations which in turn minimizes irradiance

14

variations at the target." *Id.* at 4:35-43 (emphasis added).  In the very same passage in which it defines the present invention as being "U-shaped," the specification explicitly distinguishes and criticizes illuminators with a "flat" emitting surface.

In light of this criticism of flat illuminators, "it is difficult to envisage how… one could read the claims of the patents-in-suit to cover such devices." *Openwave Sys., Inc. v. Apple Inc.*, 808 F.3d 509, 513–517 (Fed. Cir. 2015); *see also Astrazeneca AB v. Mut. Pharm. Co.,* 384 F.3d 1333, 1339–40 (Fed. Cir. 2004) ("Where the general summary or description of the invention describes a feature of the invention (here, micelles formed by the solubilizer) and criticizes other products (here, other solubilizers, including co-solvents) that lack that same feature, this operates as a clear disavowal of these other products").  For example, the Federal Circuit has found disclaimer of disparaged features where a patentee described that embodiment as "antiquated," having "inherent inadequacies," and detailed "deficiencies [that] make it difficult" to use.  *Chi. Bd. Options Exch., Inc. v. Int'l Sec. Exch., LLC*, 677 F.3d 1361, 1372 (Fed. Cir. 2012).  That is exactly how the Asserted Patents describe the "conventional" flat illuminators that existed prior to the invention.  Ex. 1 at 4:35-43.  Plaintiff may not describe its invention as contoured, disparage flat light sources, and then expand the patent claims to assert infringement against companies which use flat designs.

### 4.  The Claimed Invention Is Limited to a Contoured Illuminator / Light Sources

The Federal Circuit in *Pacing Technologies* cited numerous cases demonstrating the different scenarios in which claims must be limited in accordance with the specification, including clear descriptions of the "present invention," presentation of a single, necessary embodiment, and criticism of alternatives as inadequate and insufficient.  778 F.3d at 1024–25.  Here, the Court is presented with not just one of these scenarios, but all three in tandem.  The Federal Circuit's

15

decision in *Rembrandt* is particularly instructive on these facts.  716 Fed. Appx. 965.  There, the parties disputed whether the claimed process for recovering computer data needed to be "automatic" despite the claims not using that word.  *Id.* at 969–970.  The Federal Circuit found that while the "asserted claims do not recite the word 'automatic' or any variation thereof and do not appear to require automated recovery when read in isolation," the claims were nonetheless limited to "automatic" processes in view of the specification.  *Id.* at 971.  First, the specification required this result because it "repeatedly characterizes the recovery process of the 'present invention' as being 'automated.'"  *Id.*; *see also Verizon,* 503 F.3d at 1308 ("When a patent thus describes the features of the 'present invention' as a whole, this description limits the scope of the invention.").  Second, the court in *Rembrandt* pointed to the fact that the specification "describes only a single embodiment of the claimed recovery functionality," and that sole embodiment worked "automatically, without human intervention."  716 Fed. Appx. at 971–972; *see also Regents of University of Minnesota v. AGA Medical Corp.*, 717 F.3d 929, 936 (Fed. Cir. 2013) (finding limitation supported by disclosed embodiment because it "is not just the preferred embodiment of the invention; it is the *only* one described.") (quoting *Gen. Am. Transp. Corp. v. Cryo–Trans, Inc.*, 93 F.3d 766, 770 (Fed. Cir. 1996)).  As a result, "the clear takeaway from reviewing the [Rembrandt] patent is that its process … is necessarily an automated one, i.e., conducted without human intervention."  716 Fed. Appx. at 972.

Third, the court in *Rembrandt* found that "this clear takeaway" was reinforced by the specification's "criticism of prior art recovery methods that involved human intervention."  *Id.* Just as the Asserted Patents here criticize flat illuminators as unable to accomplish the claimed purpose of the invention, the patent in *Rembrandt* disparaged non-automatic processes as "inferior to the present invention" and insecure.  *Id.*  As a result, the Federal Circuit concluded that "where

16

the patent clearly distinguishes non-automated processes from the [Rembrandt] patent's invention and makes clear that non-automated processes do not accomplish the invention's stated objectives of improved security and lower cost of ownership, the district court correctly construed the claims to require automated recovery." *Id.* at 974; *see also Astrazeneca,* 384 F.3d at 1339–41 (limiting claim where patentee defined invention, preferred embodiment matched definition, and specification criticized non-preferred embodiments).

Likewise here, the Asserted Patents define the "present invention" as a contoured illuminator, which is the only embodiment of the invention. The Asserted Patents tie the claimed improvements and uniform illumination properties to the contoured embodiment. And the Asserted Patents disparage prior art "flat" embodiments as inferior and unable to accomplish the stated goal of uniform illumination. Thus, just like *Rembrandt*, this is a case where "the intrinsic evidence clearly limits the scope" of the asserted claims. *Id.* at 971. Accordingly, the claimed illuminator should be construed as "one or more light sources generally conforming to a contoured surface.

### B. "plurality of light sources configurable in a spaced relationship to the patient" ('991 Patent claim 1)

| Defendants' Construction | Plaintiff's Construction |
| --- | --- |
| "plurality of light sources generally conforming to a contoured surface" | Plain and ordinary meaning. |

The term "illuminator" appears only in the preamble of the asserted claims of the '991 Patent. However, this does not broaden the scope of the '991 Patent beyond the contoured shape of the invention for two independent reasons. First, as discussed above at footnote 5, "illuminator" acts as a limitation in the '991 Patent, just as it does in the '289 Patent. Second, even if "illuminator" is found not to be limiting in the '991 Patent preamble, the one independent claim of the '991 Patent invokes the same contoured limitation through its use of the term "plurality of

17

light sources."   Just like "illuminator," the term "plurality of light sources" is bound by the specification's description of the present invention, its sole contoured embodiment, and its criticism of the prior art discussed above.  And the Asserted Patents make clear that the plurality of light sources must themselves conform to a contoured surface.  *See, e.g.,* Ex. 2 at Abstract ("a plurality of light sources generally conforming to a contoured surface").

As discussed in detail above, the present invention is a purportedly novel illuminator which compromises one or more light sources that generally conform to a contoured surface.  While the claims of the two Asserted Patents have slightly different formulations of that idea – with the '289 Patent claiming a method using an illuminator with recited light characteristics, and the '991 Patent claiming an illuminator device with recited features including a plurality of lights – the fact remains that the "present invention" is described identically in the Asserted Patents and must be applied to both.

Consistent with the above discussion of "illuminator," the specification does not describe just any "plurality of light sources" as its invention, but instead describes the invention as light sources conforming to a contoured surface.  Ex. 1 at 2:66-3:6; 3:7-14; 4:1-6.  Similarly, the specification does not describe just any "spaced relationship" to the patient as its invention, but instead the particular spaced relationship that comes with a contoured light source design.  Ex. 1 at 3:15-19; 3:29-33; *see also* Figs. 1, 4A; 5:27-29; 5:40-45; 6:16-18; 6:31-33; 6:39-42.  Moreover, the invocation of "illuminator" in the preamble indicates a common interpretation of illuminator in the '289 Patent and the corresponding light sources in the '991 Patent.  *See, e.g., in re Body Science LLC Patent Litigation*, 167 F.Supp.3d 152, 159 (D. Mass. 2016) (finding that even where the preamble is not limiting, a term found in preamble may nonetheless "inform the construction

18

of a term that appears in the claim body" and require consistent treatment) (citing *August Technology Corp. v. Camtek, Ltd.*, 655 F.3d 1278, 1284 (Fed. Cir. 2011)).

Thus, if the term "illuminator" is found non-limiting in the '991 Patent, the construction of the term "plurality of light sources configurable in a spaced relationship to the patient" must be construed as light sources "generally conforming to a contoured surface" in order properly to reflect the invention described in the Asserted Patents.

### C.  "all operation distances" ('289 Patent claim 1; '991 Patent claim 11)

| Defendants' Construction | Plaintiff's Construction |
| --- | --- |
| Indefinite. | Plain and ordinary meaning. |

Section 112 of the patent statute requires that "a patent's claims, viewed in light of the specification and prosecution history, inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S.Ct. 2120, 2129 (2014); 35 U.S.C. § 112.  Claims must provide "clear notice of what is claimed, thereby 'appris[ing] the public of what is still open to them.'"  *Id.*  Claim language that "fails to provide an objective standard for determining the scope of the invention and instead relies on the unrestrained, subjective opinion of the person practicing the invention" is indefinite and renders the claim invalid.  *Prolifiq Software Inc. v. Veeva Systems Inc.*, 2014 WL 3870016, *5 (N.D. Cal. Aug. 6, 2014).  Similarly, a "term of degree fails to provide sufficient notice of its scope if it depends 'on the vagaries of any one person's opinion'" and a "purely subjective" claim term is invalid if "sufficient guidance is lacking in the written description."  *See Interval Licensing, LLC v. AOL, Inc.*, 766 F.3d 1364, 1371 (Fed. Cir. 2014) (*quoting Datamize*, 417 F.3d at 1350–51).

In contrast to other asserted claims which state particular distances, *see, e.g.,* Ex. 1 at claim 2 ("measured output over an active emitting area is at least 70% of the measured maximum at distances of 4'' and 2'''"), claim 1 of the '289 Patent and claim 11 of the '991 Patent simply state

19

that 60% uniformity must be achieved over "all operation distances."  Yet, the Asserted Patents provide *no* guidance as to what "all operation distances" means.  *See in re Neurografix ('360) Patent Litigation*, 201 F.Supp.3d 206, 222–223 (D. Mass. 2016) (claim indefinite where "nothing in the specification and prosecution history provides an objective standard" to evaluate term of degree); *see also id.* ("Because nothing in the '360 patent sheds light on the limits of proximity required by the 'near' term, the court finds that the term is indefinite as a matter of law.")  In fact, the specification's only usage of the term "operation distance" mimics the claim language with no further explanation.  *See* Ex. 1 at 15:10-11.

Plaintiff likewise provides no guidance with its proposed construction, simply stating that the term "all operation distances" has a plain and ordinary meaning to a person of ordinary skill in the art.[7]  While Plaintiff suggested in the parties' meet and confer that the term is tied to manufacturer-defined specifications, the intrinsic record provides no support for this post-hoc explanation as opposed to myriad alternatives such as distances used in practice for patient treatment, distances used in laboratory testing of PDT therapies, or distances in which light output could be detected.  *See, e.g., Teva Pharmaceuticals USA, Inc. v. Sandoz, Inc.*, 789 F.3d 1335, 1344–45 (Fed. Cir. 2015) (finding claims invalid where a measurement "can be ascertained by any of three possible measures," the claims and specification do not define the term, and the term does not have a "plain meaning to one of skill in the art"); *Dow Chemicals Co. v. Nova Chemicals*

---

[7] Plaintiff has not defined the level of skill of the ordinary skilled artisan.  Biofrontera submits that a person of ordinary skill in the art ("POSITA") at the time of the filing date of the '289 and '991 Patents would have had at least a Bachelor of Science in electrical engineering, physics, biomedical engineering, computer engineering, material science, or a related scientific or engineering field, and at least one year of work or research experience in optics, optoelectronics, radiometry, photometry, or a related field.  Alternatively, a POSITA in the relevant time frame would have been someone with at least four years of industry or academic experience in optics, optoelectronics, radiometry, photometry, or a related field.

*Corp.*, 803 F.3d 620, 634 (Fed. Cir. 2015) ("[T]he existence of multiple methods leading to different results without guidance in the patent or the prosecution history as to which method should be used renders the claims indefinite."). It is not enough to identify "*some standard* for measuring the scope of the phrase," *Interval Licensing*, 766 F.3d at 1370–71, particularly where, as here, the specification never mentions manufacturer specifications. Rather, "[t]he claims, when read in light of the specification and the prosecution history, must provide objective boundaries for those of skill in the art." *Id*.

With their reliance on an indefinite term "all operation distances," claim 1 of the '289 Patent[8] and claim 11 of the '991 Patent are invalid under Section 112.

### D. "uniform output of light" / "uniform output of at least one of blue light and red light" ('991 Patent claims 1, 12)

| Defendants' Construction | Plaintiff's Construction |
|---|---|
| Indefinite. | "output of light sufficient to activate a target photosensitizer"<br><br>"output of at least one of blue light and red light sufficient to activate a target photosensitizer" |

For reasons similar to those described above with respect to "all operation distances," the term "uniform output of light" does not sufficiently describe what it means for light to be "uniform" in this context, and is thus indefinite. Whereas other claims define "uniformity," stating that, for example, the light output within the active emitting area must be within 70% of the measured maximum over that area, claims 1 and 12 of the '991 Patent provide no such clarity. Rather, these claims merely state that there be "uniform" output of light at specified distances, with no indication as to how to measure uniformity or what level of uniformity is required.

---

[8] Asserted claims 2-19 of the '289 Patent depend on claim 1 and thus are similarly indefinite.

21

The '991 Patent varyingly describes uniformity as "sufficiently uniform in intensity over a contoured surface," 2:43-45, "consistent uniformity in terms of both spectral characteristics and intensity over a contoured surface," 2:50-53, and "substantially uniform intensity visible light." 3:9-14. However, the claims revert to the bare word "uniform," which begs the question: how uniform must an illuminator be to constitute a "uniform output of light?" The claims do not answer that question, nor does the specification. *See Nautilus*, 134 S.Ct. at 2129 (cautioning against allowing a "zone of uncertainty which enterprise and experimentation may enter only at risk of infringement claims").

Recognizing this deficiency, Plaintiff's proposed construction redefines "uniformity" by attaching a concept unsupported by the specification: "sufficient to activate a target photosensitizer." Plaintiff's proposed construction is incorrect for at least three reasons. First, "sufficiency" is a separate concept from uniformity. Second, activation of a target photosensitizer is likewise different from uniformity as described in the Asserted Patents. And third, Plaintiff's construction provides no meaningfully precise guidance as to what may infringe. Each of these flaws are addressed below.

The patent specification separately describes the concept of "sufficiency" of light output as a goal of the invention resulting from uniformity as opposed to a definition of uniformity itself, and indeed distinguishes light that is *sufficiently* uniform from light that is in fact "uniform." Ex. 2 at 2:29-45 ("it is desirable to have a power output which is uniform in intensity and color … [c]onventional illuminators do not produce visible light that is sufficiently uniform in intensity over a contoured surface"). Plaintiff thus conflates the object of the invention with the contested claim limitation and attaches meaning not found in the claims themselves. The claims do not use the word "sufficient," and there is no reason why this particular term should be used as opposed

22

to the various other adjectives used in concert with uniformity throughout the patent specification. *See id. at* 2:43-45, 2:50-53, 3:9-14; *see also Nautilus*, 134 S.Ct. at 2130 & n.8 (indicating that there is an indefiniteness problem if the claim language "might mean several different things and 'no informed and confident choice is available among the contending definitions'").

Moreover, the concept of "uniformity" in the Asserted Patents is not tied to activation of a target photosensitizer as proposed by Plaintiff. The only mention in the specification of the concept of activation of target photosensitizers is instead in reference to output of a particular *color spectrum* that overlaps a target photosensitizer, as opposed to uniformity of output intensity. Ex. 2 at 2:30-34. As the specification describes, it is advantageous to have light output that overlaps the target photosensitizer (*e.g.*, blue light, red light, or green light). *Id.* at 2:34-41. Light color is a separate concept from uniformity of output in terms of light intensity, as confirmed by the fact that the claims themselves separately describe "uniform output of light," on the one hand, and "uniform output" of "blue light" or "red light," on the other hand. There is no support for Plaintiff's attempt to tie the words "sufficient" or "activation" to the term "uniform output of light."

Finally, Plaintiff's construction itself does not provide meaningfully precise guidance as to how uniform the light may be. *See Halliburton Energy Servs., Inc. v. M–I LLC*, 514 F.3d 1244, 1251 (Fed. Cir. 2008) ("The fact that [the patent holder] can articulate a definition supported by the specification ... does not end the inquiry. Even if a claim term's definition can be reduced to words, the claim is still indefinite if a person of ordinary skill in the art cannot translate the definition into meaningfully precise claim scope."). Indeed the construction itself provides more questions than answers. Which target photosensitizers are covered given that the Asserted Patents only mention one target photosensitizer? What is "sufficient" to activate those photosensitizers and how does one determine sufficiency?

23

On their face, claims 1 and 12 of the '991 Patent are unclear, Plaintiff's construction does not align with the text or the specification, and even with that construction the jury will still be in the dark as to the claim term's scope.  As a result, these claims are indefinite. [9]

## V.    CONCLUSION

For the foregoing reasons, Biofrontera respectfully requests that its proposed constructions above be adopted in their entirety.

Dated:  October 5, 2018                         /s/ Justin R. Lowery

 

Nellie E. Hestin (BBO No. 676886)
MCGUIREWOODS LLP
260 Forbes Avenue
Suite 1800
Pittsburgh, PA 15222
Telephone: 412-667-7909
Facsimile: 412-667-6050
nhestin@mcguirewoods.com

-and-

David E. Finkelson
Brian C. Riopelle
Justin R. Lowery
**MCGUIREWOODS LLP**
800 East Canal Street
Richmond, VA 23219
T: 804.775.1157
F: 804.225.5377
dfinkelson@mcguirewoods.com
biropelle@mcguirewoods.com
jlowery@mcguirewoods.com
(*admitted pro hac vice*)

*Attorneys for Defendants*

---

[9] Asserted claims 2-10 and 12 of the '991 Patent are dependent on claim 1 and thus are similarly indefinite.

24

**CERTIFICATE OF SERVICE**

I, Justin R. Lowery, certify that on October 5, 2018, this brief was electronically filed with the Clerk of the Court for the United States District Court for the District of Massachusetts using the CM/ECF system.  All participants in the case are registered CM/ECF users and will be served by the system.

*/s/ Justin R. Lowery*_____
Justin R. Lowery