**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

DUSA PHARMACEUTICALS, INC.

       Plaintiff

    v.

BIOFRONTERA INC.,  BIOFRONTERA
BIOSCIENCE GMBH, BIOFRONTERA
PHARMA GMBH, BIOFRONTERA
DEVELOPMENT GMBH, BIOFRONTERA
NEUROSCIENCE GMBH, AND
BIOFRONTERA AG,

       Defendants.

Civil Action No. 1:18-cv-10568-RGS

**JURY TRIAL DEMANDED**

**PLAINTIFF DUSA PHARMACEUTICALS, INC.'S**
**REPLY CLAIM CONSTRUCTION BRIEF**

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ......................................................................................................... 1

II.   ARGUMENT ON DISPUTED CLAIM CONSTRUCTIONS ............................................. 2

    A.    "Illuminator" ....................................................................................................... 2

    B.    "Plurality of light sources configurable in a spaced relationship to the patient" ........... 5

    C.    "All operation distances".................................................................................... 7

    D.    "Uniform output of light" and "The light sources are configured and controlled to provide a uniform output of at least one of blue light and red light" ............................ 9

III.   CONCLUSION.................................................................................................... 11

## TABLE OF AUTHORITIES

**Cases**                                                           **Page(s)**

*Astrazeneca AB v. Mut. Pharm. Co.*,
384 F.3d 1333 (Fed. Cir. 2004)..................................................................................3, 4

*Exxon Research & Eng'g Co. v. U.S.*,
265 F.3d 1371 (Fed. Cir. 2001)....................................................................................10

*Honeywell Intern. Inc. v. ITT Industries, Inc.*,
452 F.3d 1312 (Fed. Cir. 2006)......................................................................................5

*Lava Trading, Inc. v. Sonic Trading Mgmt., LLC*,
445 F.3d 1348 (Fed. Cir. 2006).......................................................................................6

*Mallinckrodt Inc. v. Masimo Corp.*,
147 Fed. App'x 158 (Fed. Cir. 2005)..........................................................................7, 9

*Medrad, Inc. v. MRI Devices Corp.*,
401 F.3d 1313 (Fed. Cir. 2005)....................................................................................10

*NeoMagic Corp. v. Trident Microsystems, Inc.*,
287 F.3d 1062 (Fed. Cir. 2002).......................................................................................1

*Oatey Co. v. IPS Corp.*,
514 F.3d 1271 (Fed. Cir. 2008).......................................................................................6

*Össur HF & Össur Ams., Inc. v. iwalk, Inc.*,
No. 12-11061-FDS, 2013 U.S. Dist. LEXIS 111933, at *25 (D. Mass. Aug. 8,
2013) ................................................................................................................................7

*Pacing Techs., LLC v. Garmin Int'l, Inc.*,
778 F.3d 1021 (Fed. Cir. 2015)....................................................................................4, 5

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005)....................................................................................10

*Rembrandt Patent Innovations, LLC v. Apple, Inc.*,
716 Fed. App'x 965 (Fed. Cir. 2017).............................................................................4

*Rexnord Corp. v. Laitram Corp.*,
274 F.3d 1336 (Fed. Cir. 2001).......................................................................................2

*SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*,
242 F.3d 1337 (Fed. Cir. 2001).......................................................................................5

*Solomon v. Kimberly-Clark Corp.*,
216 F.3d 1372 (Fed. Cir. 2000).......................................................................................5

*Sonix Tech. Co. v. Publ'ns Int'l, Ltd.*,
    844 F.3d 1370 (Fed. Cir. 2017)..........................................................................................10

*SRI Int'l v. Matsushita Elec. Corp. of Am.*,
    775 F.2d 1107 (Fed. Cir. 1985) (*en banc*) ..............................................................................1

*Sunrise Techs., Inc. v. Cimcon Lighting*,
    280 F. Supp. 3d 238 (D. Mass. 2017) ....................................................................................8

*Verizon Servs. Corp. v. Vonage Holdings Corp.*,
    503 F.3d 1295 (Fed. Cir. 2007)..............................................................................................5

## Other Authorities

L.R. 16.6(e)(3) ....................................................................................................................7

## I.   INTRODUCTION

Biofrontera's opening brief only confirms that DUSA's constructions are consistent with the language of the claims and the intrinsic record.  Rather than identifying any purported flaws in DUSA's proposed constructions, Biofrontera devotes most of its opening brief to arguing that the claims should be limited to a preferred embodiment disclosed in the specification.  Biofrontera's positions are flatly against the weight of the intrinsic evidence and the law.  Biofrontera contends, incorrectly, that its constructions of "illuminator" and "plurality of light sources" are case dispositive.  ECF No. 71 (Biofrontera Opening Br.) at 2 n.3.  They are not.  Biofrontera's contention also runs afoul of blackletter law that "claims may not be construed with reference to the accused device." *NeoMagic Corp. v. Trident Microsystems, Inc.*, 287 F.3d 1062, 1074 (Fed. Cir. 2002); *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1108 (Fed. Cir. 1985) (*en banc*).  In any event, this statement only illustrates the results-driven motivation for Biofrontera's unsupported narrow constructions.

Biofrontera then argues that two claim terms are indefinite.  Biofrontera's argument fails to meet the high burden to prove duly-issued claims are invalid; indeed, its entire indefiniteness arguments consist of no more than conclusory attorney argument.  Biofrontera chose not to submit any expert opinions or any other evidence supporting its indefiniteness theory.  Notwithstanding the fact that indefiniteness is not ripe for decision at the claim construction stage of this case, Biofrontera has failed to meet its burden in any event.  The intrinsic evidence—the claim language, the patent specifications, and the prosecution histories—compels adoption of DUSA's constructions.

## II.   ARGUMENT ON DISPUTED CLAIM CONSTRUCTIONS

### A.  "Illuminator"

| Term | Claim(s) | DUSA's Construction | Biofrontera's Construction |
|---|---|---|---|
| "illuminator" | '991: claims 1-3, 5-7, 9-12<br><br>'289: claims 1-6, 16-19 | "a light emitting medical instrument" | "one or more light sources generally conforming to a contoured surface" |

DUSA's asserted patents concern the uniform output of light to treat or diagnose a patient. While the inventors disclosed other aspects such as the shape of the illuminator and whether it conforms to a contoured surface, for instance in the preferred embodiment or as claimed in other patents in this patent family, those aspects are not claimed in the patents-in-suit. *See, e.g.*, ECF No. 73-3 (U.S. Pat. No. 6,709,446) at claim 1; ECF No. 73-4 (U.S. Pat. No. 6,223,071) at claims 1, 2. The claim language here does not require any specific shape of the illuminator to achieve uniform exposure. Simply put, the intrinsic record of the patents-in-suit do not limit an illuminator to one that "generally conforms to a contoured surface." *See Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1344 (Fed. Cir. 2001) ("Our case law is clear that an applicant is not required to describe in the specification every conceivable and possible future embodiment of the invention. . . . If structural claims were to be limited to devices operated precisely as a specification-described embodiment is operated, there would be no need for claims.") (internal citations omitted).

The specification discloses several embodiments directed to various aspects of the patentee's inventions. A preferred embodiment has U-shaped light sources. In another embodiment, the patent focuses on the nature of the output of light, and not on the shape of the light sources. *Compare* ECF No. 73-1 ('991 pat.) at 5:35-37 *with* 2:64-67; 3:43-51. The latter embodiment does not specify any restriction of shape, so long as the light sources are variably spaced and "generally parallel to one another" so that they can be adapted for irradiating "uniform

intensity light." *Id.* at 2:64-67; 3:43-51.[1]  It is the latter embodiment that is the focus of the patents-in-suit here.

In fact, Biofrontera is attempting to limit the invention to something that is not actually required by either embodiment—"conforming to a contoured surface."  Biofrontera relies on the "U-shaped" embodiment—which Biofrontera wrongly claims is the only embodiment in the patents—to find support for its "conforming to a contoured surface" narrowing construction.  ECF No. 71-0 (Biofrontera Opening Br.) at 13-14.  But these concepts are not the same because a "U-shaped" illuminator does not necessarily "conform[] to a contoured surface."  For instance, the patents-in-suit describe using the illuminator on a patient generally, *e.g.*, "arms, legs, etc."  ECF No. 73-1 ('991 pat.) at 1:31-34.[2]  Under Biofrontera's flawed logic that the "U-shaped" illuminator is the only disclosed embodiment, (ECF No. 71-0 (Biofrontera Opening Br.) at 13-14), such a "U-shaped" illuminator should conform to all contours of the patient, including one's "arms, legs, etc."  But this is not necessarily so, and thus, the "U-shaped" embodiment does not even support narrowing the claim term "illuminator" to be one that "conforms to a contoured surface."

Biofrontera's reliance on *Astrazeneca AB v. Mut. Pharm. Co.*, 384 F.3d 1333 (Fed. Cir. 2004) is misguided.  *See, e.g.*, ECF No. 71-0 (Biofrontera Opening Br.) at 13 n.6.  While the court in that case limited claim scope to the preferred embodiment, Biofrontera fails to note that the

---

[1] Biofrontera's argument tying the concept of uniformity of light to only the preferred "U-shaped" embodiment in the specification is wrong.  *See* ECF No. 71-0 (Biofrontera Opening Br.) at 13-14. This argument ignores the alternative embodiment in the specification which does not require any restriction of shape to achieve uniform output of light.  Biofrontera also mischaracterizes the references to "conventional" illuminators in the specification, which focus on uniformity of light, not shape.  *See* ECF No. 73-1 ('991 pat.) at 2:11-28, 2:42-44, 4:24-34.  Further, the section of the specification Biofrontera relies on to make this argument in no way limits the embodiment to a specific shape.  *See* ECF No. 73-2 ('289 pat.) at 15:6-11.

[2] Biofrontera's reliance on reference to a "flat emitting surface" for treating "all contours of the face simultaneously" also ignores the fact that the asserted claims are not limited to treating "all contours of the face simultaneously."  ECF No. 71-0 (Biofrontera Opening Br.) at 14.

court did so because "[t]he inventors' lexicography alone works an implicit disavowal." 384 F.3d at 1340. The specification in that case used the disavowing language, "*the solubilizers* suitable according to the invention *are **defined** below*" rather than using non-limiting language, "*a solubilizer* suitable for the preparations according to the invention." *Id.* at 1339 (emphasis added). In contrast to the patent specification in *Astrazeneca*, the passage cited by Biofrontera to support its assertion is clearly non-limiting. ECF No. 73-1 ('991 pat.) at 15:37-42 ("It has been found that, according to ***a preferred embodiment*** of the present invention, the measured output . . . .") (emphasis added).[3]

Moreover, Biofrontera's reliance on the *Pacing Techs., LLC v. Garmin Int'l, Inc.* decision does not apply to any facts present here. In *Pacing Techs.*, the court found a disavowal or disclaimer of claim scope based upon limiting statements made by the patentee in the specification, where the patentee prefaced statements with the terms "the present invention ***includes***" and "the present invention ***is***" and where the patentee "describe[d] the features of the present invention ***as a whole***." *Pacing Techs., LLC v. Garmin Int'l, Inc.*, 778 F.3d 1021, 1024-25 (Fed. Cir. 2015) (internal quotations omitted) (emphasis added). Here, none of the cited passages identified by Biofrontera contain this language, or purport to describe features of the invention as a whole. They—instead—explicitly are descriptions of a preferred embodiment, and not the invention as a whole. *See* ECF No. 71-0 (Biofrontera Opening Br.) at 9-10; *see also* ECF No. 73-1 ('991 pat.) at

---

[3] Biofrontera's reliance on *Rembrandt Patent Innovations, LLC v. Apple, Inc.*, 716 Fed. App'x 965 (Fed. Cir. 2017) is likewise misguided. ECF No. 71-0 (Biofrontera Opening Br.) at 15-17. In contrast to DUSA's patents, the patent at issue in that case explicitly disclosed only a single embodiment. *Id.* at 971. What's more is that the court in *Rembrandt* found disclaimer of claim scope because of the strong language used in the specification of the patent in that case to differentiate the single disclosed embodiment from the prior art. *Id.* at 972. Neither scenario is applicable here.

2:50-60; 3:7-21; 4:8-13; 4:46-48; *cf. Pacing Techs.*, 778 F.3d at 1025 (stating that "[t]he characterization of a feature as 'an object' or 'another object,' or even as a 'principal object,' will not always rise to the level of disclaimer").[4]

Finally, Biofrontera resorts to out-of-context inventor testimony that actually demonstrates the lack of intrinsic record support for its construction. It is well settled that inventor testimony should be given little to no weight in claim construction. *See Solomon v. Kimberly-Clark Corp.*, 216 F.3d 1372, 1379 (Fed. Cir. 2000) (finding "litigation-derived inventor testimony in the context of claim construction . . . is entitled to little, if any, probative value") (citing *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 985 (Fed. Cir. 1995)). Nevertheless, none of the cited inventor testimony limits the claim term "illuminator" to a particular shape. Rather, the testimony is consistent with the importance of delivering a uniform output of light. *See, e.g.*, ECF No. 71-6 (Kozodoy Tr.) at 64:13-15 (stating "there was no illuminator designed at the time to deliver uniform distribution of light").

### B.    "Plurality of light sources configurable in a spaced relationship to the patient"

| Term | Claim(s) | DUSA's Construction | Biofrontera's Construction |
|---|---|---|---|
| "plurality of light sources configurable in a spaced relationship to the patient" | '991: claim 1 | plain and ordinary meaning | "plurality of light sources generally conforming to a contoured surface" |

---

[4] The *Verizon* and *Honeywell* cases Biofrontera relies on fail for the same reason, *i.e.* the cases hold that statements describing the invention as a whole rather than just a preferred embodiment may limit the scope of the invention. This is not the case here. *See Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1308 (Fed. Cir. 2007); *Honeywell Intern. Inc. v. ITT Industries, Inc.*, 452 F.3d 1312, 1318 (Fed. Cir. 2006). Biofrontera's reliance on *SciMed* likewise does not support Biofrontera's position, since the court found disclaimer of a feature that was not described in the specification following the phrase "*all* embodiments of the present invention contemplated and disclosed herein . . . ." *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1343-44 (Fed. Cir. 2001). No such broad and unequivocal limiting language is present in the specification here.

5

The same defects in Biofrontera's construction for "illuminator" apply to this term as well. *See supra.* Biofrontera additionally fails to put forth any support for its argument that this term needs construction, other than Biofrontera's emphasis on the preferred embodiment. ECF No. 71-0 (Biofrontera Opening Br.) at 17–19. As DUSA stated in its Opening Brief, a POSITA would readily understand the plain and ordinary meaning of this term and as such, the Court does not need to construe it. ECF No. 74-0 (Zamenhof Decl.) at ¶¶ 30–35; ECF No. 72 (DUSA Opening Br.) at 10-11.

Again, Biofrontera's proposed construction ignores other descriptions of the invention, such as disclosure of an embodiment of the illuminator that emulates an "infinite plane emitter" with light sources that are "generally parallel to one another." *See, e.g.*, ECF No. 73-1 ('991 pat.) at 2:64-67; 3:43-51; *see also* ECF No. 72 (DUSA Opening Br.) at 8-9. This "parallel" arrangement of the light sources contemplated by the specification imposes no requirement that the light sources conform to a contoured surface, just that they be "configurable" and "spaced." *See also* ECF No. 74-0 (Zamenhof Decl.) at ¶¶ 30-35. As with "illuminator," Biofrontera's proposed construction thus excludes embodiments disclosed in the specification. *See Oatey Co. v. IPS Corp.*, 514 F.3d 1271, 1276 (Fed. Cir. 2008) ("We normally do not interpret claim terms in a way that excludes embodiments disclosed in the specification."); *Lava Trading, Inc. v. Sonic Trading Mgmt., LLC*, 445 F.3d 1348, 1353-54 (Fed. Cir. 2006) (vacating district court claim construction for excluding embodiments disclosed in the specification). Furthermore, other patents in the family specifically claim light sources which conform in shape to a patient, including to contoured surfaces of the patient. *See* ECF No. 72 (DUSA Opening Br.) at 9-10 (describing claims of other related patents to an "illuminator" that comprises "a plurality of light sources generally conforming to the contoured surface and irradiating the contoured surface"). This shows that when the patentee

6

intended to claim such a shape, it did so.   Accordingly, Biofrontera's unsupported narrow construction should be rejected.

### C.      "All operation distances"

| Term | Claim(s) | DUSA's Construction | Biofrontera's Construction |
|------|----------|---------------------|----------------------------|
| "all operation distances" | '289: claim 1<br><br>'991: claim 11 | plain and ordinary meaning | indefinite |

Biofrontera has not met its burden to prove indefiniteness of this term by clear and convincing evidence.   Biofrontera's entire case for indefiniteness of this term is merely unsupported attorney argument.   *See* ECF No. 71-0 (Biofrontera Opening Br.) at 19-21.   Courts regularly find this type of evidence insufficient.   *See, e.g., Mallinckrodt Inc. v. Masimo Corp.*, 147 Fed. App'x 158, 179-80 (Fed. Cir. 2005) (finding no indefiniteness when defendant "bases its indefiniteness challenge entirely on attorney argument"); *Össur HF & Össur Ams., Inc. v. iwalk, Inc.*, No. 12-11061-FDS, 2013 U.S. Dist. LEXIS 111933, at *25 (D. Mass. Aug. 8, 2013) (finding terms not indefinite at claim construction because "attorney argument, without more, is generally not considered clear and convincing evidence sufficient to overcome the presumption of validity.").

Biofrontera fails to put forth any evidence that this term would not be understood by a POSITA in view of the claims and specification.[5]   In contrast, DUSA submitted the declaration of

---

[5] To the extent Biofrontera attempts to submit an expert declaration for the first time in its reply brief, moreover, DUSA objects to such late disclosure on an issue upon which Biofrontera bears the burden.   Doing so unduly prejudices DUSA, as DUSA does not have the opportunity to reply to Biofrontera's expert testimony.   While this case is not governed by the recently adopted Patent Rule in this district, DUSA notes that the Rule states, "[a]ny party seeking to rely on expert testimony to support claim construction must include with its opening brief an expert declaration." D. Mass. L.R. 16.6(e)(3).   Accordingly, if Biofrontera submits an expert declaration with its reply brief, DUSA intends to move to strike the declaration, or in the alternative, move for leave of the

Dr. Robert Zamenhof, which explains that a POSITA reading the claims and specification of DUSA's patents would readily understand this term. *See* ECF No. 74-0 (Zamenhof Decl.) at ¶¶ 36-40. Biofrontera's conclusory attorney arguments fall well short of meeting its burden to prove indefiniteness, which in any event courts have regularly held not to be an appropriate determination for the claim construction phase.[6] *Sunrise Techs., Inc. v. Cimcon Lighting*, 280 F. Supp. 3d 238, 247 (D. Mass. 2017) ("[I]ndefiniteness should be resolved at the summary judgment stage rather than upon claim construction.").

Further, Biofrontera fails to recognize the context of the invention, asserting that the "intrinsic record provides no support for this post-hoc explanation as opposed to myriad alternatives such as distances used in practice for patient treatment, distances used in laboratory testing of PDT therapies, or distances in which light output could be detected." ECF No. 71-0 (Biofrontera Opening Br.) at 20. But the invention here is within the context of "diagnosing or treating a patient," which is explicitly recited by the claims. *See, e.g.*, ECF No. 73-1 ('991 pat.) at claim 1; ECF No. 73-2 ('289 pat.) at claims 1, 7-15. Thus, a POSITA reading the claims and specification would appreciate how this invention is used, and readily understand what "all operation distances" means. *See* ECF No. 74-0 (Zamenhof Decl.) at ¶¶ 36–40.

---

Court to file a surreply and accompanying declaration to respond to the opinions submitted in Biofrontera's expert declaration. DUSA notified Biofrontera of its position on this issue.

[6] Biofrontera also had the opportunity in its Opening Brief but failed to explain that it necessarily admitted to the U.S. Patent and Trademark Office that this term was ***not*** indefinite when it filed petitions for *inter partes* review of the '289 and '991 patents and presented an argument that the term "all operation distances" was allegedly explicitly disclosed in the prior art. *See* ECF No. 72 (DUSA Opening Br.) at 12; ECF No. 73-5 (Excerpt of Biofrontera's IPR Petition on the '991 patent) at 29, 41-42, 52, 62-63, 68; ECF No. 73-6 (Excerpt of Biofrontera's IPR Petition on the '289 patent) at 22, 27, 39, 44, 55.

**D.** **"Uniform output of light" and "The light sources are configured and controlled to provide a uniform output of at least one of blue light and red light"**

| Term | Claim(s) | DUSA's Construction | Biofrontera's Construction |
|------|----------|--------------------|--------------------------|
| "uniform output of light"<br><br>"the light sources are configured and controlled to provide a uniform output of at least one of blue light and red light" | '991: claims 1, 12 | "output of light sufficient to activate a target photosensitizer"<br><br>"the light sources are configured and controlled to provide output of at least one of blue light and red light sufficient to activate a target photosensitizer" | indefinite |

Biofrontera has likewise not met its burden to prove indefiniteness of this term by clear and convincing evidence. Similar to the term above, Biofrontera's entire case for indefiniteness of this term is merely unsupported attorney argument. *See* ECF No. 71-0 (Biofrontera Opening Br.) at 21-24. Again, courts regularly find this type of evidence insufficient. *See Mallinckrodt Inc.*, 147 Fed. App'x at 179-80; *Össur HF & Össur Ams., Inc.*, 2013 U.S. Dist. LEXIS 111933 at *25.

Biofrontera again fails to put forth any evidence that this term would not be understood by a POSITA in view of the claims and specification. In contrast, DUSA's construction is supported by the declaration of Dr. Zamenhof, a POSITA, who when reading the claims and specification of DUSA's patents, understands this term to be captured by DUSA's functional construction. *See* ECF No. 74-0 (Zamenhof Decl.) at ¶ 41. Biofrontera's conclusory and unsupported attorney arguments fall well short of meeting its burden to prove indefiniteness.[7]

---

[7] Biofrontera again had the opportunity in its Opening Brief but failed to explain that it has implicitly admitted these terms are not indefinite in its petition seeking *inter partes* review of the '991 patent. *See* ECF No. 72 (DUSA Opening Br.) at 16; ECF No. 73-5 (Excerpt of Biofrontera's IPR Petition on the '991 patent) at 9, 10, 26-27, 29, 32, 43-45, 53, 55-56, 58, 63, 65, 68.

The specification and intrinsic record are clear that "[o]utput spectrum, irradiance, and irradiance uniformity all must be controlled to assure that the properties of the device are suitable to deliver light to the target lesions and drive the photodynamic reaction." ECF No. 73-1 ('991 pat.) at 4:28-31. In other words, the light parameters are controllable to be sufficiently uniform to achieve efficacy of the PDT. Biofrontera's claim that only the color of the light, and not the concept of uniformity, is tied to the activation of the target photosensitizer is also contrary to the intrinsic evidence. *See* ECF No. 71-0 (Biofrontera Opening Br.) at 23. Numerous references in the specification and in the file histories of these and related patents clearly tie the concept of uniformity to the activation of the target photosensitizer. *See* ECF No. 72 (DUSA Opening Br.) at 14-16; ECF No. 73-1 ('991 pat.) at 2:30-33; 4:26-33; *see also* ECF No. 73-8 (Applicant's 2/6/17 Remarks in Reply to Office Action) (9,723,991 File History) at 5; ECF No. 73-9 (Applicant's 10/3/00 Remarks in Reply to Office Action) (6,223,071 File History) at 3; ECF No. 73-10 (Applicant's 11/12/09 Remarks in Reply to Office Action) (7,723,910 File History) at 9.

Moreover, Biofrontera's assertion that "Plaintiff's construction itself does not provide meaningfully precise guidance as to how uniform the light may be" misses the point of a construction that "aligns with the patent's description of the invention" and captures "what the inventors actually invented." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1316 (Fed. Cir. 2005) (quoting *Renishaw PLC v. Marposs Societa' Per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998)). Courts have held that construing claim terms in this sort of functional manner is proper. *See Medrad, Inc. v. MRI Devices Corp.*, 401 F.3d 1313, 1319 (Fed. Cir. 2005) ("[I]t is . . . entirely proper to consider the functions of an invention in seeking to determine the meaning of particular claim language"); *Exxon Research & Eng'g Co. v. U.S.*, 265 F.3d 1371, 1381 (Fed. Cir. 2001); *see also Sonix Tech. Co. v. Publ'ns Int'l, Ltd.*, 844 F.3d 1370, 1377 (Fed. Cir. 2017) (finding "a

10

patentee need not define his invention with mathematical precision in order to comply with the definiteness requirement") (quoting *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374, 1384 (Fed. Cir. 2005)).  Consistent with this approach, DUSA's construction goes to the reason for this claim limitation, and why it is necessary for the diagnosis or treatment purpose of the invention. Whether a PDT provider was using the invention to treat versus to diagnose a patient would require different "precise guidance."  However, the functionality of the invention would be the same for both treatment and diagnosis, and thus DUSA's functional construction most accurately aligns with the claim language in view of the specification and file histories.  DUSA's construction is also consistent with the only evidence in the record of how a POSITA would understand this term in view of the specification.  *See* ECF No. 74-0 (Zamenhof Decl.) at ¶ 41.

## III.    CONCLUSION

In view of the foregoing, DUSA respectfully requests that the Court adopt DUSA's positions on each disputed claim term and reject Biofrontera's proposed constructions.

11

Dated: October 19, 2018

Respectfully submitted,

By: */s/     Adam Kessel*
Adam J. Kessel (BBO # 661,211)
kessel@fr.com
Kevin Su (BBO # 663,726)
su@fr.com
Brendan F. Murphy (BBO # 699,503)
bmurphy@fr.com
Fish & Richardson P.C.
One Marina Park Drive
Boston, MA 02110
Phone: 617-542-5070 / Fax: 617-542-8906

Betty H. Chen, SBN 290588
Admitted *pro hac vice*, bchen@fr.com
Fish & Richardson P.C.
500 Arguello Street, Suite 500
Redwood City, CA 94063
Phone: 650-893-5070 / Fax: 650-893-5071

Jacqueline Tio, GA Bar No. 940367
Admitted *pro hac vice*, tio@fr.com
Wonjoon Chung, GA Bar No. 396468
Admitted *pro hac vice*, chung@fr.com
Fish & Richardson P.C.
1180 Peachtree Street N.E., 21st floor
Atlanta, GA 30309
Phone: 404-892-5005 / Fax: 404-892-5002

Jeremy T. Saks, NY Reg. No. 5302542
Admitted *pro hac vice*, saks@fr.com
Fish & Richardson P.C.
601 Lexington Avenue, 52nd Floor
New York, NY 10022
Phone: 212-765-5070 / Fax: 212-258-2291

***Attorneys for Plaintiff DUSA Pharmaceuticals, Inc.***

12

## CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this 19th day of October, 2018.

*/s/      Adam Kessel*
Adam Kessel

13