**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| DUSA PHARMACEUTICALS, INC. <br><br> Plaintiff <br><br> v. <br><br> BIOFRONTERA INC., BIOFRONTERA BIOSCIENCE GMBH, BIOFRONTERA PHARMA GMBH, AND BIOFRONTERA AG, <br><br> Defendants. | Civil Action No. 1:18-cv-10568-RGS <br><br> **JURY TRIAL DEMANDED** |

**BIOFRONTERA'S REPLY CLAIM CONSTRUCTION BRIEF**

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................... 1

II.     "ILLUMINATOR" ................................................................................................ 1

        A.      The Invention of the Asserted Patents Is a Contoured Illuminator......................... 1

        B.      The Asserted Patents Do Not Disclose a Flat Embodiment ................................... 2

                1.      "Emulating an Infinite Plane Emitter" Does Not Teach a Planar Design ....... 3

                2.      "Generally Parallel" Lights Do Not Teach a Planar Design............................ 4

                3.      Other Patents in the Family Do Not Support Plaintiff's Construction ............ 5

                4.      The Court Should Disregard Plaintiff's Conclusory Expert Declaration ........ 7

        C.      Plaintiff Ignores the Specification's Criticism of Flat Illuminators and the Weight
                of the Intrinsic Record as a Whole........................................................................ 8

III.    "PLURALITY OF LIGHTS CONFIGURABLE IN A SPACED RELATIONSHIP TO
        THE PATIENT" ................................................................................................... 9

IV.     "ALL OPERATION DISTANCES"...................................................................... 10

V.      "UNIFORM OUTPUT OF LIGHT".................................................................... 13

VI.     CONCLUSION.................................................................................................... 15

## TABLE OF EXHIBITS[1]

Exhibit 1 – U.S Patent No. 8,216,289

Exhibit 2 – U.S. Patent No. 9,723,991

Exhibit 3 – Excerpts from the Prosecution History of U.S. Patent No. 8,216,289

Exhibit 4 – Excerpts from the Prosecution History of U.S. Patent No. 9,723,991

Exhibit 5 – Excerpts from the Deposition of Elton Leppelmeier dated June 22, 2018

Exhibit 6 – Excerpts from the Deposition of Rebecca Kozodoy dated August 22, 2018

---

[1] Exhibits 1-6 reference Exhibits filed with Biofrontera's Preliminary Claim Construction Brief ("Op. Br.") (Dkt. Nos. 71-1 – 71-6).

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AllVoice Computing PLC v. Nuance Commc'ns., Inc.*,
504 F.3d 1236 (Fed. Cir. 2007)...................................................................................10

*Anchor Wall Systems, Inc. v. Rockwood Retaining Walls, Inc.*,
340 F.3d 1298 (Fed. Cir. 2003)......................................................................................5

*Avenue Innovations, Inc. v. E. Mishan & Sons Inc.*,
310 F.Supp.3d 457 (S.D.N.Y. 2018)............................................................................12

*Bicon, Inc. v. Straumann Co.*,
441 F.3d 945 (Fed. Cir. 2006).........................................................................................5

*Boston Scientific Corp. v. Cook Inc.*,
187 F.Supp.3d 249 (D. Mass. 2016) ..............................................................................7

*Curtiss-Wright Flow Control Corp. v. Velan, Inc.*,
438 F.3d 1374 (Fed. Cir. 2006)......................................................................................5

*Default Proof Credit Card Sys., Inc. v. Home Depot U.S.A., Inc.*,
412 F.3d 1291 (Fed. Cir. 2005).....................................................................................11

*GPNE Corp. v. Apple Inc.*,
830 F.3d 1365 (Fed. Cir. 2016).......................................................................................6

*Haliburton Energy Services, Inc. v. M-I LLC*,
514 F.3d 1244 (Fed. Cir. 2008)........................................................................12, 13, 14

*Honeywell Intern., Inc. v. International Trade Com'n*,
341 F.3d 1332 (Fed. Cir. 2003).............................................................................11, 13

*Keurig, Inc. v. JBR, Inc.*,
2013 WL 1213061 (D. Mass. Mar. 22, 2013)................................................................9

*Lamps Plus, Inc. v. Dolan*,
2006 WL 133469 (Fed. Cir. 2006)..................................................................................5

*Multiform Desiccants, Inc. v. Medzam, Ltd.*,
133 F.3d 1473 (Fed. Cir. 1998).......................................................................................6

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
134 S.Ct. 2120 (2014).................................................................................................1, 10

*Noah Systems, Inc. v. Intuit Inc.*,
   675 F.3d 1302 (Fed. Cir. 2012)......................................................................................11

*Openwave Sys., Inc. v. Apple Inc.*,
   808 F.3d 509 (Fed. Cir. 2015)......................................................................................8, 9

*Pacing Techs., LLC v. Garmin Int'l, Inc.*,
   778 F.3d 1021 (Fed. Cir. 2015)....................................................................................2, 8

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) (en banc).......................................................................7

*R.H. Murphy Co. Inc. v. Illinois Tool Works, Inc.*,
   409 F.Supp.2d 53 (D. Mass. 2006) .................................................................................7

*Regents of University of Minnesota v. AGA Medical Corp.*,
   717 F.3d 929 (Fed. Cir. 2013).........................................................................................8

*Rembrandt Patent Innovations, LLC v. Apple, Inc.*,
   716 Fed. Appx. 965 (Fed. Cir. 2017) (unpublished)....................................................1, 9

*Samson Mfg. Corp. v. Austin Precision Prods., Inc.*,
   2010 WL 2639864 (D. Mass. June 29, 2010) ..................................................................5

*Shire LLC v. Abhai, LLC*,
   219 F.Supp.3d 241 (D. Mass. 2016) ...............................................................................6

*Trustees of Boston University v. Everlight Electronics, Inc.*,
   23 F.Supp.3d 50 (D. Mass. 2014) ...................................................................................7

*In re Walter*,
   698 Fed.Appx. 1022 (Fed. Cir. 2017).............................................................................11

*Wi-LAN USA, Inc. v. Apple Inc.*,
   830 F.3d 1374 (Fed. Cir. 2016)........................................................................................5

**Statutes**

35 U.S.C. § 311(b) .................................................................................................................12

**Other Authorities**

https://www.merriam-webster.com/dictionary/emulate (last accessed Oct. 19,
   2018) ................................................................................................................................3

https://www.merriam-webster.com/dictionary/parallel (last accessed Oct. 19,
   2018) ................................................................................................................................4

## I.    INTRODUCTION

The Asserted Patents repeatedly and without exception describe the present invention as a contoured illuminator.  They teach a contoured design as their one and only inventive embodiment. And they criticize non-contoured illuminators as unable to accomplish the goals of the invention. This trifecta of intrinsic record evidence dictates Biofrontera's construction of "illuminator" and "plurality of lights," and renders Plaintiff's broadening construction unsustainable as a matter of law under the reasoning of cases such as *Astrazeneca* and *Rembrandt*.  Faced with this, Plaintiff distorts the language of the specification in an effort to find a flat illuminator somewhere in these patents, despite the specification's admonition that a flat embodiment does not work.  Plaintiff then compounds this error by invoking an expert declaration that cites zero intrinsic evidence and simply parrots the legal conclusions of Plaintiff's counsel, ignoring this Court's precedent that such opinions have no weight.  The question of what was invented here is answered not by a naked expert declaration or by Plaintiff's linguistic sleight of hand, but by the clear and unequivocal teaching of the specification that the invention is "an illuminator comprising a plurality of light sources generally conforming to a contoured surface," Ex. 1 at Abstract, as Biofrontera proposes.

With respect to the two indefinite terms that affect all asserted claims, Plaintiff again sidesteps the intrinsic record and relies on bare expert conclusions that the terms "all operation distances" and "uniform output of light" can be understood.  However, *Nautilus* and like cases require that the intrinsic record itself – not the attorneys or their expert – must provide reasonable certainty as to the meaning of the claim terms. Here, the Asserted Patents fail that test.

## II.    "ILLUMINATOR"

### A.  The Invention of the Asserted Patents Is a Contoured Illuminator

As detailed in Biofrontera's opening brief, the specification of the Asserted Patents consistently describes the "present invention" as a contoured illuminator. Op. Br. at 9-10.  Plaintiff

1

admits that the "object" of the invention is illumination over a contoured surface, Plaintiff's Preliminary Claim Construction Brief ("Pl. Br.") at 8, but fights the fact that the invention achieves that objective only by an illuminator "generally conforming to the contoured surface." Ex. 1 at 2:66-3:6. The specification presents "clear and unmistakable statements by the patentee that limit the claims" and Plaintiff fails to address them. *Pacing Techs., LLC v. Garmin Int'l, Inc.*, 778 F.3d 1021, 1024 (Fed. Cir. 2015).

Plaintiff instead argues incorrectly that Biofrontera's construction conflicts with statements in the specification that the light sources "*may be* generally U-shaped," arguing that "U-shaped light sources designed to surround a facial treatment area of a patient is just one embodiment." Pl. Br. at 8. No such conflict exists. Even if Plaintiff is correct that this permissive language allows contoured designs beyond those that are "generally U-shaped," it does not follow that ***non-contoured*** designs are also within the scope of the asserted claims. Importantly, Plaintiff has not pointed to any statement in the specification that the invention "may be contoured." The specification says just the opposite in teaching that the illuminator of the invention *must* conform to contoured surfaces in order to achieve its purported benefits. Ex. 1 at 4:35-43. There are no presented examples of illumination of *flat* surfaces using a *flat* illuminator, and the inventors have testified that such illuminators already existed in the prior art. Op. Br. at 12. While the particular contoured shape may vary with the particular contoured surface to be illuminated, the contoured nature of the illuminator is not an option, but a requirement, of this invention.

### B.  The Asserted Patents Do Not Disclose a Flat Illuminator Embodiment

Plaintiff cites one paragraph of the specification in arguing that the Asserted Patents disclose a planar embodiment. Pl. Br. at 9:

> "[T]here is also provided according to the present invention an illuminator for *emulating an infinite plane emitter*. The illuminator comprises an emitting area having a perimeter, and a plurality of light sources being *generally parallel to one another*, said plurality of

2

light sources being adapted for irradiating substantially uniform intensity light from said emitting area. Lateral spacing between adjacent ones of said plurality of light sources varies with respect to said perimeter."

Ex. 1 at 3:36-44 (emphasis added).  Neither of the two italicized phrases in the above passage teaches a planar design.  Plaintiff's contrary interpretation does violence to the phrases themselves, and conflicts with the entirety of the intrinsic record requiring a contoured design.

### 1.    "Emulating an Infinite Plane Emitter" Does Not Teach a Planar Design

The phrase "infinite plane emitter" itself bears no relationship to the shape of the illuminator, and the Asserted Patents never say otherwise.  Instead, as Plaintiff admits, "infinite plane emitter" is a theoretical concept – an infinitely large emitter that consequently maintains uniformity.  *See* Pl. Br. at 9 n4 ("an infinite plane emitter refers to an illuminator that would provide substantially uniform intensity of light across the entirety of the active emitting area").  The phrase has nothing to do with design, as it is impossible to create an "infinite" emitter, and instead represents the goal of *uniform output*.  The specification confirms as much when stating that an object of the invention is "approximat[ing] the uniform output of an infinite plane emitter."  Ex. 1 at 2:57-60.

Moreover, while Plaintiff argues that the above passage "describes an embodiment of the illuminator that *is* an 'infinite plane emitter'," Pl. Br. at 8-9 (emphasis added), this is not what the passage says.  Instead, it states that the illuminator "***emulat[es]*** an infinite plane emitter," acknowledging that the illuminator is ***not*** one but is instead trying to match the effect of one.  Ex. 1 at 3:36-44; *see also* Ex. 1 at 2:57-60 (invention "approximat[ing]" the output of an infinite plane emitter).  The plain meaning of "emulate" is to "strive to equal or excel" or "imitate."   *See* https://www.merriam-webster.com/dictionary/emulate (last accessed Oct. 19, 2018).

3

This is further confirmed by the same paragraph of the specification stating that the illuminator has a "perimeter" and thus is not infinite. Ex. 1 at 3:36-44. In fact, the specification explicitly states that it is the ***U-shaped design*** of Figure 1 that "emulate[s] an infinite plane emitter." Ex. 1 at 6:10-30. As such, there is nothing in this phrase that supports Plaintiff's broadening of the claimed illuminator to cover a planar shape.

### 2. "Generally Parallel" Lights Do Not Teach a Planar Design

Plaintiff next argues that the specification's reference to "generally parallel" lights denotes a "planar" embodiment. This is plainly wrong, as the Asserted Patents themselves depict U-shaped lights arranged in parallel fashion:

 

*See* Ex. 1 at Fig. 1 (top-down view of parallel, stacked U-shaped lights, demonstrated to be aligned by the fact that only one is visible from top); Fig. 2 (side view of the same U-shaped embodiment of Fig. 1 showing parallel lights maintaining same alignment and distance) (with red lines added for emphasis); 6:44-59 (with reference to the U-shaped embodiment of Figs. 1 and 2, "seven tubes **10(1)-10(7)** are placed in the chassis in symmetric fashion" with defined, consistent spacing).

4

To say that objects are "parallel" simply means that they "extend[] in the same direction" or are "equidistant" from one another at all points. *See* https://www.merriam-webster.com/dictionary/parallel (last accessed Oct. 19, 2018); *see also Anchor Wall Systems, Inc. v. Rockwood Retaining Walls, Inc.*, 340 F.3d 1298, 1311 (Fed. Cir. 2003) ("It is undisputed in this case that ordinarily, 'parallel' means 'everywhere equal distant.'"); *Samson Mfg. Corp. v. Austin Precision Prods., Inc.*, 2010 WL 2639864, *6 (D. Mass. June 29, 2010) ("in substantial alignment with" construed as "at least largely parallel to;" and "substantially parallel to" construed as "largely extending in the same direction as"). By definition, "parallel" includes *non-planar* parallel surfaces. *Id*. ("concentric spheres are parallel") (citing Merriam–Webster Collegiate Dictionary 842 (10th ed.1998)). Indeed, the Federal Circuit has found that *non-planar* designs and shapes, such as cylinders and circles, can be "parallel" to one another. *See Lamps Plus, Inc. v. Dolan*, 2006 WL 133469, *1-2 (Fed. Cir. 2006) (a cylinder is comprised of "equal and parallel circles").

The plain meaning of "parallel" corresponds with Figures 1 and 2, showing U-shaped lights that extend in the same direction, have the same alignment, and maintain the same distance at all points. There is no planar embodiment in Plaintiff's cited passage or otherwise.

### 3.    Other Patents in the Family Do Not Support Plaintiff's Construction

Plaintiff contends without legal support that the presence of the words "arc-shaped" or "contoured" in describing the illuminator in parent patent claims that are not part of this lawsuit suggests that the term "illuminator" should be construed more broadly here. Pl. Br. at 9-10.[2] To the contrary, claims in parent patents cannot redefine the specification's description of the "present

---

[2] Plaintiff's one cited case, *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 950-51 (Fed. Cir. 2006), does not stand for this proposition, and instead makes the unsurprising point that language *within a claim* should not be rendered superfluous by a claim construction of another term *within that same claim*. *Id*. The superfluousness doctrine makes little sense applied *across patents*, especially given that claims in different patents may "define the invention using different terminology." *See, e.g., Wi-LAN USA, Inc. v. Apple Inc.*, 830 F.3d 1374, 1391 (Fed. Cir. 2016).

5

invention" because interpretive doctrines "cannot broaden claims beyond their correct scope." *Curtiss-Wright Flow Control Corp. v. Velan, Inc.*, 438 F.3d 1374, 1381 (Fed. Cir. 2006); *see also GPNE Corp. v. Apple Inc.*, 830 F.3d 1365, 1370-71 (Fed. Cir. 2016) (rejecting claim differentiation "when the specification or prosecution history dictates a contrary construction"); *id*. ("We have recognized that when a patent 'repeatedly and consistently' characterizes a claim term in a particular way, it is proper to construe the claim term in accordance with that characterization."); *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1480 (Fed. Cir. 1998) ("[T]he doctrine of claim differentiation can not broaden claims beyond their correct scope, determined in light of the specification and the prosecution history and any relevant extrinsic evidence.... [C]laims that are written in different words may ultimately cover substantially the same subject matter.").

Indeed, in *Shire LLC v. Abhai, LLC,* 219 F.Supp.3d 241, 246-247 (D. Mass. 2016), a court in this District squarely rejected the argument now presented by Plaintiff. In *Shire,* the patent-holder argued that claims could not be interpreted as requiring "pulse[d] release" because another family-member patent with the same specification explicitly claimed that feature. *Id.* The Court disagreed, finding that "[d]ifferently worded but similar claims in related patents can be construed identically, especially where those patents share a specification and other technical details." *Id*. In particular, the Court found that the specification of both patents described the "present invention" referred to a "pulsed dose delivery system" and the word "pulse[d]" appeared throughout the specification, indicating the importance of that term. *Id*. As a result, "both Shire's own characterization of the invention in the '148 Patent as a 'pulsed dose drug delivery system,' and the centrality of pulsed dosing throughout the specification, indicate that Shire has limited itself to a 'pulsed dose' invention." *Id*. The same is true here. Regardless of the fact that parent

6

patents claim an "arc" or "contoured" shape, the specification's description of the "present invention" of the illuminator remains controlling.

### 4. The Court Should Disregard Plaintiff's Conclusory Expert Declaration

Plaintiff relies on a conclusory expert declaration to support its proposed construction of "illuminator." As a threshold matter, extrinsic evidence such as expert testimony is generally "less reliable" than intrinsic evidence such as the specification. *Boston Scientific Corp. v. Cook Inc.*, 187 F.Supp.3d 249, 257 (D. Mass. 2016) (quoting *Phillips*, 415 F.3d at 1318–19); *see also Phillips v. AWH Corp.*, 415 F.3d 1303, 1318 (Fed. Cir. 2005) (en banc) (expert opinion should be discounted when it is "clearly at odds with the claim construction mandated by the claims themselves, the written description, and the prosecution history").

However, the problems with Plaintiff's expert evidence go well beyond this general principle. The entirety of the expert's opinion on the term "illuminator" is that he "agrees with DUSA's proposed construction," Dkt. 74 at ¶ 74, and does not support Biofrontera's construction. *Id.* at ¶ 75. Plaintiff's expert provides no citations, no substantive analysis of the term, and no other support for his opinion on "illuminator" beyond stating in wholly conclusory fashion that DUSA's construction is consistent with the intrinsic record. *Id*. at ¶ 74

Courts should "disregard expert opinions that are merely conclusory and unsupported by intrinsic evidence or other sources." *Trustees of Boston University v. Everlight Electronics, Inc.*, 23 F.Supp.3d 50, 58 (D. Mass. 2014) (citing *SkinMedica, Inc. v. Histogen Inc.*, 727 F.3d 1187, 1195 (Fed. Cir. 2013)); *see also R.H. Murphy Co. Inc. v. Illinois Tool Works, Inc.*, 409 F.Supp.2d 53, 62 (D. Mass. 2006) ("conclusory, unsupported assertions by experts as to the definition of a claim term are not useful to a court") (*quoting Phillips*, 415 F.3d at 1318). The declaration of Plaintiff's expert should be given no weight on the construction of "illuminator."

**C.      Plaintiff Ignores the Specification's Criticism of Flat Illuminators and the Weight of the Intrinsic Record as a Whole**

Plaintiff acknowledges that the object of the invention is illumination "over a diversely contoured surface." Pl. Br. at 8. Yet Plaintiff ignores the specification's admonition that a flat illuminator cannot accomplish this objective: "A ***flat emitting surface would not deliver a uniform light dose to all contours of the face simultaneously*** because the non-planar facial and scalp surfaces could not be placed at a constant distance from the emitting surface." Ex. 1 at 4:35-43 (emphasis added). Precisely because of this recited shortcoming of flat illuminators, "***the present invention uses a U-shaped emitting surface***." *Id.* at 4:46-47 (emphasis added); *see also id*. at 6:31-42 ("The U-shape minimizes the variation in distance between the emitter and the target, providing uniform visible light distribution … the "U" shape provides the desired irradiance and irradiance uniformity for scalp and facial irradiation, and thus ensures the proper visible light dosage is applied to all target areas during PDT.").

The term "illuminator" cannot be construed to include the very same flat emitting surfaces that the specification disparages. *Openwave Sys., Inc. v. Apple Inc.*, 808 F.3d 509, 513–517 (Fed. Cir. 2015) (where patent disparages devices, "it is difficult to envisage how… one could read the claims of the patents-in-suit to cover such devices.") But Plaintiff's construction would do just that.

In sum, the specification of the Asserted Patents repeatedly describes the present invention as an illuminator that conforms to a contoured surface. Ex. 1 at 2:66-3:6; *see, e.g., Pacing Techs*, 778 F.3d at 1024 (descriptions of "present invention" are "clear and unmistakable statements" that limit claims). The specification presents only a single embodiment, and it is contoured: a U-shaped illuminator conforming to the face of a patient. Ex. 1 at Fig. 1; 3:15-19; *see, e.g., Regents of University of Minnesota v. AGA Medical Corp.*, 717 F.3d 929, 936 (Fed. Cir. 2013) (disclosed

embodiment instructive because it "is not just the preferred embodiment of the invention; it is the *only* one described"). And the specification disparages flat illuminators. Ex. 1 at 4:35-43; *see, e.g., Openwave*, 808 F.3d at 513–517.

When these three factors are present together, a claim term like "illuminator" must be limited to the invention taught. *See* Op. Br. at 15-17; *Rembrandt Patent Innovations, LLC v. Apple, Inc.*, 716 Fed. Appx. 965, 971–74 (Fed. Cir. 2017) (unpublished); *Astrazeneca,* 384 F.3d at 1339–41. This Court should therefore adopt Biofrontera's proposal and construe "illuminator" as "one or more light sources generally conforming to a contoured surface."

### III. "PLURALITY OF LIGHTS CONFIGURABLE IN A SPACED RELATIONSHIP TO THE PATIENT"

The disputed "plurality of lights" term is limited to the present invention in the same way as the term "illuminator." Op. Br. at 17-19. Accordingly, the terms must be interpreted consistently, particularly in the event "illuminator" is found not to be limiting in the '991 Patent.[3] Plaintiff merely argues in response that the term carries a "plain and ordinary" and "readily understood" meaning. Pl. Br. at 10-11. As with the term "illuminator," Plaintiff chooses to ignore the specification, which states that the "plurality of lights" of the invention "conform to a contoured surface." Ex. 1 at 2:66-3:6; 3:7-14; 4:1-6.[4]

The one case from this district cited by Plaintiff misses the point. The dispute in *Keurig, Inc. v. JBR, Inc.* was whether certain simple terms that matched the invention described in the specification needed to be construed at all. 2013 WL 1213061, *7 (D. Mass. Mar. 22, 2013). The Court found that the claims concerned a "relatively simple apparatus" where the "ordinary

---

[3] Plaintiff, however, does not appear to dispute Biofrontera's position that "illuminator" is limiting in the preamble of the '991 Patent and warrants the same construction across both Asserted Patents.

[4] Plaintiff conclusory expert declaration should be disregarded for the reasons discussed above.

meanings of the terms accurately describe" the disputed terms used in the apparatus. *Id*. at \*7–8. That is not the case here. If "plurality of lights" is construed as Plaintiff suggests, then it would not comport with the present invention as described throughout the specification, or with the sole embodiment, and it would capture the light design criticized as inadequate by the patentee. Biofrontera's proposed construction, in contrast, holds true to this intrinsic record. For that reason, "plurality of lights configurable in a spaced relationship to the patient" should be construed as "plurality of light sources generally conforming to a contoured surface."

IV.     "ALL OPERATION DISTANCES"

Plaintiff's brief itself presents two different potential interpretations of what "all operation distances" means, demonstrating the inherent uncertainty in this phrase that is undefined by the specification. Plaintiff first asserts that the term "all operation distances" is "well-known" and "refers to the range of distances at which the PDT device is operated to deliver therapy to a patient." Pl. Br. at 11. Plaintiff then states that the term refers to the distances defined in the product specifications of different illuminator manufacturers. *Id.* at 12. Neither interpretation comes from the intrinsic record, and indeed Plaintiff cites *no* intrinsic evidence to support them. This lack of intrinsic support is determinative, because "[t]he test for definiteness asks whether one skilled in the art would understand the bounds of the claim *when read in light of the specification.*" *AllVoice Computing PLC v. Nuance Commc'ns., Inc.*, 504 F.3d 1236, 1240 (Fed. Cir. 2007) (emphasis added); *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S.Ct. 2120, 2129 (2014) (claims "viewed in light of the specification and prosecution history" must inform those of skill of their scope).

Again, Plaintiff tries unsuccessfully to fill the holes in its argument with extrinsic expert evidence. Plaintiff's expert asserts, without citation, that Plaintiff's interpretation of "all operation distances" is correct and would be readily understood by those in the art. The Federal Circuit has

deemed such evidence insufficient to defeat a showing of indefiniteness based on the intrinsic record.  *See, e.g., In re Walter*, 698 Fed.Appx. 1022, 1027 (Fed. Cir. 2017) (rejecting patentee's reliance on a "wholly conclusory" expert declaration unsupported by "evidence or analysis," where "nothing in the specification, prosecution history, or proper art provides any indication as to what range of [structures] is covered by the term").  Similarly, in the context of Section 112(6), the Federal Circuit has found expert declarations inadequate to fill in structure lacking in the specification.  *See Default Proof Credit Card Sys., Inc. v. Home Depot U.S.A., Inc.*, 412 F.3d 1291, 1302 (Fed. Cir. 2005) (patentee "cannot use the declaration of its expert to rewrite the patent's specification."); *Noah Systems, Inc. v. Intuit Inc.*, 675 F.3d 1302, 1312 (Fed. Cir. 2012) ("The prohibition against using expert testimony in this manner is a direct consequence of the requirement that the specification itself adequately disclose the corresponding structure.")

Conversely, anticipating an argument that Biofrontera expects from Plaintiff in reply, a defendant does not need expert testimony to prove indefiniteness where, as here, a subjective term is wholly undefined by the patent specification.  *See, e.g., Honeywell Intern., Inc. v. International Trade Com'n*, 341 F.3d 1332, 1339-40 (Fed. Cir. 2003) (finding claim indefinite without reliance on any expert testimony from defendant, where plaintiff's "only support for its claim construction comes from the declaration testimony of its expert"); *Noah Systems*, 675 F.3d. at 1319 (where specification discloses no algorithm corresponding to structure, expert testimony to prove indefiniteness unnecessary); *Default Proof*, 412 F.3d at 1300-1303 (rejecting argument that court must consider plaintiff's expert testimony as "the only testimony from the perspective of a skilled artisan," where that expert's testimony was "legally insufficient").

Plaintiff's arguments regarding Biofrontera's IPR and the original prosecution of the Asserted Patents are irrelevant to the question of whether the *specification* adequately describes

the term "all operation distances," such that a person of ordinary skill could determine its metes and bounds.  With respect to Biofrontera's IPR on the '289 and '991 Patents,[5] Plaintiff leaves out that Biofrontera is precluded from presenting indefiniteness challenges in IPR proceedings.  *See* 35 U.S.C. § 311(b).  And if Plaintiff were correct that an indefiniteness showing could be rebutted by the mere fact that a patent examiner approved the claims during original prosecution, then no issued patent could ever be challenged on indefiniteness grounds.  Instead, what remains paramount are the "broader concerns that no person skilled in the art can ever know the exact scope of the patentee's rights" based on the claims as drafted.  *See Avenue Innovations, Inc. v. E. Mishan & Sons Inc.*, 310 F.Supp.3d 457, 465-66 (S.D.N.Y. 2018) (finding claims indefinite over argument that defendant's IPR petition and the original patent examiner had not raised indefiniteness).

Finally, Plaintiff's claim that it can show infringement under its proposed construction by looking at Biofrontera's product specifications further proves Biofrontera's point.  The fact that an objective methodology changes from device to device itself indicates indefiniteness.  *See Haliburton Energy Services, Inc. v. M-I LLC*, 514 F.3d 1244, 1255 (Fed. Cir. 2008) ("When a proposed construction requires that an artisan make a separate infringement determination for every set of circumstances in which the composition may be used, and when such determinations are likely to result in differing outcomes (sometimes infringing and sometimes not), that construction is likely to be indefinite.").  Plaintiff's citation to *MeadWestVaco* is inapposite, given that the dispute here is not whether the accused product meets a particular standard, as in *MeadWestVaco*, but whether the Asserted Patents *provide any objective standard at all*.  Because

---

[5] Biofrontera's IPRs on the '289 Patent (No. 2018-01585) and '991 Patent (No. 2018-01586) were filed on August 22, 2018.  Institution decisions are expected no later than February 28, 2019.

the intrinsic record does not sufficiently define the metes and bounds of "all operation distances," the term should be found indefinite.

## V.      "UNIFORM OUTPUT OF LIGHT"

Plaintiff proposes a construction for "uniform output of light" in the '991 Patent, admitting that the term needs construction in order to be meaningfully applied. Yet the '991 Patent varyingly and inconsistently describes uniformity as "sufficiently uniform in intensity over a contoured surface," *Id.* at 2:43-45; "consistent uniformity in terms of both spectral characteristics and intensity over a contoured surface," *Id.* at 2:50-53; and "substantially uniform intensity visible light." *Id.* at 3:9-14.  Plaintiff likewise struggles to define what "uniformity" refers to, and proffers multiple possible interpretations:  uniformity of "spectral output and intensity," Pl. Br. at 1; light "sufficiently uniform to provide effective treatment," *id*. at 4; uniformity to avoid "variable results when treating patients", *id*.; uniformity in "color or wavelength," *id*.; a "minimum threshold" to activate photosensitizers, *id*., and undefined "uniform parameters," *id*. at 14.  These interpretations are conflicting, with Plaintiff conflating the specification's discussion of "spectral output" (i.e., color and wavelength) needed to match a photosensitizer, *id.* at 14-15 (citing Ex. 2 at 2:30-33), with "uniform intensity" light for uniform therapeutic effect.  *Id.* at 15.  Plaintiff's expert has the same difficulty, pointing separately to uniformity in an undefined set of "parameters," uniform "intensity," and uniform color or wavelength.  Dkt. 74 at ¶¶ 22-24; *see also Honeywell* 341 F.3d at 1339-40 (term indefinite where there are multiple interpretations and the "intrinsic record does not compel a narrowing of the claim language to any one of these possible definitions").

In the face of these multiple, different interpretations, Plaintiff argues that the function of the invention should control.  However, the Federal Circuit has stated that functional claiming *exacerbates* indefiniteness problems rather than solves them.  *Haliburton*, 514 F.3d at 1255

13

("When a claim limitation is defined in purely functional terms, the task of determining whether that limitation is sufficiently definite is a difficult one that is highly dependent on context"). As *Haliburton* notes, "[a] patent drafter could resolve the ambiguities of a functional limitation in a number of ways" to prevent indefiniteness including providing a claim with a "quantitative metric" instead of a qualitative one. *Id*. at 1256. A "claim term might also be sufficiently definite if the specification provided a formula for calculating a property along with examples that meet the claim limitation and examples that do not." *Id*. at 1257. The '991 Patent does neither, and Plaintiff's proposed functional definition makes things worse by providing no details on photosensitizers or activation thresholds to provide a quantitative standard to the claim.

Finally, Plaintiff's proposed functional construction would inhibit the goal of the invention by potentially allowing wildly non-uniform treatment, so long as the light was "sufficient" to activate a target photosensitizer. Even if all light produced by an illuminator was "sufficient" to activate a target photosensitizer, that light could still be non-uniform in intensity and impede therapeutic objectives. Indeed, the patent file history excerpt cited by Plaintiff admits the goal is not *activation* of the photosensitizer, but *uniform therapeutic effect* and *uniform reaction* through *uniform intensity*. Pl. Br. at 15. That is why the '991 Patent requires a defined light energy dose and treatment time, corresponding to clinically acceptable results and required energy. Ex. 2 at 16:14-26. The '991 Patent also states that even direct sunlight can interfere with a photosensitizer, indicating that very weak light can nonetheless interact with a photosensitizer such that mere activation is a poor standard for judging uniformity. *Id*. at 15:59-65. Plaintiff's construction should thus be rejected, and the term "uniform output of light" should be found indefinite.[6]

---

[6] Plaintiff repeats on this term its arguments regarding Biofrontera's IPR petitions and prior allowance of the '991 Patent. Those arguments should be rejected for the reasons stated above.

14

## VI.   CONCLUSION

For the foregoing reasons, Biofrontera respectfully requests that its proposed constructions above be adopted in their entirety.

Dated:  October 19, 2018                    /s/ Justin R. Lowery

Nellie E. Hestin (BBO No. 676886)
MCGUIREWOODS LLP
260 Forbes Avenue
Suite 1800
Pittsburgh, PA 15222
Telephone: 412-667-7909
Facsimile: 412-667-6050
nhestin@mcguirewoods.com

-and-

David E. Finkelson
Brian C. Riopelle
Justin R. Lowery
**MCGUIREWOODS LLP**
800 East Canal Street
Richmond, VA 23219
T: 804.775.1157
F: 804.225.5377
dfinkelson@mcguirewoods.com
biropelle@mcguirewoods.com
jlowery@mcguirewoods.com
(*admitted pro hac vice*)

15

## CERTIFICATE OF SERVICE

I, Justin R. Lowery, certify that on October 19, 2018, this brief was electronically filed with the Clerk of the Court for the United States District Court for the District of Massachusetts using the CM/ECF system.  All participants in the case are registered CM/ECF users and will be served by the system.

/s/ Justin R. Lowery_____
Justin R. Lowery