UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 18-10568-RGS

DUSA PHARMACEUTICALS, INC.

v.

BIOFRONTERA INC., BIOFRONTERA BIOSCIENCE GMBH,
BIOFRONTERA PHARMA GMBH, and BIOFRONTERA AG

MEMORANDUM AND ORDER ON
DUSA'S MOTION TO EXCLUDE
THE OPINIONS OF LAURA STAMM

October 9, 2020

STEARNS, D.J.

DUSA moves to strike two rebuttal opinions of Biofrontera's damages expert, Laura Stamm.

*Cost Deduction in Profit Disgorgement Damages*

DUSA seeks the disgorgement of any profits derived by Biofrontera from the alleged misappropriation of DUSA's trade secrets. *See Jet Spray Cooler, Inc. v. Crampton*, 377 Mass. 159, 170 (1979) ("[T]he plaintiff is entitled to the profit he would have made had his secret not been unlawfully used, but not less than the monetary gain which the defendant reaped from his improper acts."). "Once a plaintiff demonstrates that a defendant made a profit from the sale of products produced by improper use of a trade secret,

the burden shifts to the defendant to demonstrate those costs properly to be offset against its profit and the portion of its profit attributable to factors other than the trade secret." *USM Corp. v. Marson Fastener Corp.*, 392 Mass. 334, 338 (1984). In *USM*, the Supreme Judicial Court (SJC) approved of the incremental cost approach, that is, "in allowing as deductions from gross profit only those costs that were shown to have been incurred because of the production and sale of [the infringing products]." *Id.* at 341.

DUSA faults Stamm for not having performed an incremental analysis in her rebuttal expert report. Stamm deducted from Biofrontera's gross profits all of its costs and arrived at a negative profit margin (hence with nothing to be disgorged). *See* DUSA Ex. 2 (dkt # 263-2) ¶ 170. From Biofrontera's perspective, because the accused sales are those of BF-RhodoLED and Ameluz – its only products since the inception of the company – then the entirety of its costs are attributable to the allegedly infringing products. As DUSA is seeking to recover all of Biofrontera's profits, Biofrontera believes it is entitled as a matter of fairness to deduct all of its costs.

The court agrees that Biofrontera's position makes intuitive sense in a whole-profits scenario. Because Biofrontera has made no non-accused sales, the company has no operation other than the "offending operation" and it

would have incurred no costs but for the production and marketing of BF-RhodoLED and Ameluz. *USM*, 392 Mass. at 342-343 (finding the sales, general, and administrative (SG&A) costs of a defendant whose only business was the production of the accused rivets were properly allocable to the "offending operation"). DUSA counters that in *Jet Spray*, although the defendant company also only produced and sold the product containing the asserted trade secret, *see* 377 Mass. at 183 n.22, the SJC nonetheless analyzed the propriety of individual cost deductions, *see id.* at 177-179. While the SJC approved of the whole-profits approach in that case, *see id.* at 183 n.22, the mirroring whole-cost approach was not raised by the litigants nor reached by the Court.

This court agrees with DUSA, however, that an incremental cost analysis is required for its two alternative damages models. In a second scenario, DUSA seeks profits from Biofrontera's sales to customers found on DUSA's allegedly stolen customer list. A third damages scenario seeks to recover profits from sales of Ameluz to owners of DUSA's BLU-U lamp (a combination prohibited, DUSA asserts, by the sales contract for the BLU-U). In each of these scenarios, the "offending operation" is the increase in Biofrontera's sales tied to the use of DUSA's customer list. It follows that the company's general expenses are not allocable to these targeted sales. *See*

*USM*, 392 Mass. at 342-343 (finding that the SG&A costs of a defendant which handled a variety of products other than the accused rivets not allocable to the "offending operation").

Biofrontera in its opposition suggests that the appropriate methodology is to apportion its total costs pro rata to the gross profits sought in each of DUSA's three alternative scenarios.  *See* Opp'n at 12-13.  Putting aside the validity of such an approach, *see USM*, 392 Mass. at 341 (rejecting the allocation of SG&A expenses on the basis of sales ratios), this is not a methodology disclosed in Stamm's report.  Further, only Ameluz is at issue in the third scenario, and Stamm did not make separate cost analyses for BF-RhodoLED and Ameluz.

Finally, this is not a case, as Biofrontera suggests, where vigorous cross-examination can cure the omission, nor is it a matter where a known amount in dispute can be easily added or deducted by the factfinder.  Thus, Stamm will not be permitted to testify to cost deductions with respect to the second and third scenarios.  "[W]here proof is impossible (perhaps because of the unavailability of precise data), the offending defendant takes the consequences."  *Id.* at 342.

*Panduit Factor Two – Acceptable Non-Infringing Alternatives*

DUSA seeks to establish lost profits patent damages under the *Panduit*[1] factors, which require DUSA to prove, *inter alia*, "the absence of acceptable non-infringing alternatives." *Mentor Graphics*, 851 F.3d at 1285. DUSA challenges Stamm's analysis under this second *Panduit* factor for failing to compare DUSA's patented product with asserted non-infringing alternatives.

In her rebuttal report discussing this factor, Stamm presents a comparison of the effectiveness, treatment time, ease of use, price, and patient comfort of DUSA's BLU-U lamp and Levulan with Biofrontera's accused BF-RhodoLED and Ameluz. *See* DUSA Ex. 2 ¶¶ 84-118. While such an analysis may have some relevance to a general but-for market, *see Crystal Semiconductor Corp. v. TriTech Microelecs. Int'l, Inc.*, 246 F.3d 1336, 1356 (Fed. Cir. 2001) ("[F]or lost profits based on the infringer's sales, a patentee must show that the infringing units do 'not have a disparately higher price than or possess characteristics significantly different from the patented product.'"), the court agrees with DUSA that Stamm's opinion does not apply

---

[1] The *Panduit* factors, so named for *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978), is "[o]ne 'useful, but non-exclusive' method to establish the patentee's entitlement to lost profits." *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1284 (Fed. Cir. 2017).

the appropriate legal standard.  The second *Panduit* factor examines the demand for the patented features (as opposed to the patented product as a whole under the first *Panduit* factor).  *Mentor Graphics*, 851 F.3d at 1285.  "[O]nly by comparing the patented invention to its next-best available alternative(s) . . . can the court discern the market value of the patent owner's exclusive right, and therefore his expected profit or reward, had the infringer's activities not prevented him from taking full economic advantage of this right." *Grain Processing Corp. v. Am. Maize-Prod. Co.*, 185 F.3d 1341, 1351 (Fed. Cir. 1999).

    Biofrontera suggests that Stamm's analysis goes to the economic relevance (or in its view, irrelevance) of the patented features. *See id.* at 1354.  However, such an inference does not logically flow from comparing the patented product to the accused product.  In the damages context, the accused product is presumed to embody the claimed invention.  Thus, whatever the additional advantages of the accused product, they do not establish that the patented features do not drive the demand for the patented and the accused product.  Accordingly, while Stamm may present her comparative analysis of DUSA and Biofrontera's products, she may not present it as evidence of the existence of acceptable non-infringing alternatives.  She also may not offer the opinion that other therapies such as

cryotherapy of curettage constitute acceptable non-infringing alternatives, as she did not undertake the relevant analysis.

## ORDER

For the foregoing reasons, DUSA's motion to exclude the opinions of Laura Stamm is <u>ALLOWED IN PART</u> as to any deductive cost analysis responsive to DUSA's second and third disgorgement damages scenarios, and as to her opinion that therapies such as cryotherapy or curettage constitute acceptable non-infringing alternatives, and is otherwise <u>DENIED</u>.

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE